# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 2:12-md-02311 Honorable Sean F. Cox |
| IN RE EXHAUST SYSTEMS IN RE ELECTRONIC BRAKING SYSTEMS IN RE HYDRAULIC BRAKING SYSTEMS | Case No. 2:16-cv-03703 Case No. 2:21-cv-04403 Case No. 2:21-cv-04503 |
| THIS DOCUMENT RELATES TO: End-Payor Actions | |

## END-PAYOR PLAINTIFFS' MOTION FOR ORDERS GRANTING FINAL APPROVAL OF THE ROUND 5 SETTLEMENTS

Pursuant to Federal Rule of Civil Procedure 23(e), End-Payor Plaintiffs ("EPPs") respectfully move the Court for Orders: (1) granting final approval of the settlements between EPPs and three additional settling defendant families ("Round 5 Settlements"); (2) granting final certification, pursuant to Rules 23(b)(2) and 23(b)(3) as to each of the settlement classes included in the Round 5 Settlements ("Round 5 Settlement Classes"), which were previously provisionally certified by the Court for settlement purposes only; and (3) confirming the appointment of Cotchett, Pitre & McCarthy, LLP, Robins Kaplan LLP, and Susman Godfrey L.L.P. as Settlement Class Counsel for the Round 5 Settlement Classes.

Dated: November 18, 2022

Respectfully submitted,

*/s/ William V. Reiss*
William V. Reiss
**ROBINS KAPLAN LLP**
1325 Avenue of the Americas, Suite 2601
New York, NY 10019
Telephone: (212) 980-7400
Facsimile: (212) 980-7499
WReiss@RobinsKaplan.com

1

*/s/ Elizabeth T. Castillo*
Adam J. Zapala
Elizabeth T. Castillo
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
azapala@cpmlegal.com
ecastillo@cpmlegal.com

*/s/ Marc M. Seltzer*
Marc M. Seltzer
Steven G. Sklaver
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com

Terrell W. Oxford
Chanler Langham
**SUSMAN GODFREY L.L.P.**
1000 Louisiana Street, Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
toxford@susmangodfrey.com
clangham@susmangodfrey.com

*Settlement Class Counsel for the Proposed End-Payor Plaintiff Settlement Classes*

2

E. Powell Miller
Devon P. Allard
**THE MILLER LAW FIRM, P.C.**
The Miller Law Firm, P.C.
950 W. University Dr., Ste. 300
Rochester, Michigan 48307
epm@millerlawpc.com
dpa@millerlawpc.com

*Liaison Counsel for the Proposed End-*
*Payor Plaintiff Settlement Classes*

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 2:12-md-02311 Honorable Sean F. Cox |
| IN RE EXHAUST SYSTEMS IN RE ELECTRONIC BRAKING SYSTEMS IN RE HYDRAULIC BRAKING SYSTEMS | Case No. 2:16-cv-03703 Case No. 2:21-cv-04403 Case No. 2:21-cv-04503 |
| THIS DOCUMENT RELATES TO: End-Payor Actions | |

# END-PAYOR PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR ORDERS GRANTING <u>FINAL APPROVAL OF THE ROUND 5 SETTLEMENTS</u>

## **Statement of Issues**

1. Whether the settlements between End-Payor Plaintiffs ("EPPs") and three additional settling defendant families ("Round 5 Settlements") are fair, reasonable, and adequate, and should be granted final approval under Federal Rule of Civil Procedure 23.

   Yes.

2. Whether the Court should grant final certification of the settlement classes provided for by the Round 5 Settlements, which it previously conditionally certified.

   Yes.

3. Whether the Court should confirm the appointment of Robins Kaplan LLP, Cotchett, Pitre & McCarthy, LLP, and Susman Godfrey L.L.P. as Settlement Class Counsel for the Round 5 Settlement Classes.

   Yes.

## <u>Controlling or Most Appropriate Authorities</u>

- *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. 393 (S.D. Ohio 2007)

- *In re Packaged Ice Antitrust Litig.*, No. 08-md-01952, 2011 WL 717519 (E.D. Mich. Feb. 22, 2011)

- *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517 (6th Cir. 2008)

- *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838 (6th Cir. 2013)

- *Sheick v. Auto. Component Carrier LLC*, No. 2:09-cv-14429, 2010 WL 4136958 (E.D. Mich. Oct. 18, 2010)

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................. 7

I.   THE ROUND 5 SETTLEMENTS PROVIDE SUBSTANTIAL BENEFITS
     TO EPPS ............................................................................................................. 7

     A.   Cash Components of the Round 5 Settlements ......................................... 7

     B.   Cooperation and Other Terms of the Round 5 Settlements ..................... 9

II.  THE ROUND 5 NOTICE PROGRAM WAS CARRIED OUT AND
     PROVIDED ADEQUATE NOTICE .................................................................. 11

III. THE REACTION OF MEMBERS OF THE ROUND 5 SETTLEMENT
     CLASSES HAS BEEN POSITIVE .................................................................... 14

LEGAL STANDARD ........................................................................................ 15

ARGUMENT ..................................................................................................... 16

I.   THE ROUND 5 SETTLEMENTS ARE FAIR, REASONABLE, AND
     ADEQUATE AND SHOULD RECEIVE FINAL APPROVAL ............................ 16

     A.   The Likelihood of EPPs' Success on the Merits, Weighed Against the
          Relief Provided by the Round 5 Settlements, Supports Final Approval ............. 17

     B.   The Complexity, Expense, and Likely Duration of Litigation Favor Final
          Approval ................................................................................................. 21

     C.   The Judgment of Experienced Counsel Supports Approval ................... 23

     D.   The Reaction of Class Members Weighs in Favor of Final Approval ........... 24

     E.   The Round 5 Settlements Are Consistent with the Public Interest ........... 26

     F.   The Round 5 Settlements Are the Result of Thorough Arm's-Length
          Negotiations Conducted by Highly Experienced Counsel ..................... 26

II.  NOTICE OF THE ROUND 5 SETTLEMENTS SATISFIED RULE 23(E)
     AND DUE PROCESS ....................................................................................... 26

III. THE CAFA NOTICE REQUIREMENT HAS BEEN SATISFIED BY EACH
     OF THE ROUND 5 SETTLING DEFENDANTS ............................................... 29

IV.  THE COURT SHOULD CERTIFY THE ROUND 5 SETTLEMENT
     CLASSES ......................................................................................................... 29

     A.   The Round 5 Settlement Classes Satisfy Rule 23(a) ............................. 30

          1.   Numerosity .................................................................................. 30

          2.   Commonality ............................................................................... 30

          3.   Typicality .................................................................................... 32

          4.   Adequacy .................................................................................... 32

B.      The Round 5 Settlement Classes Satisfy Rule 23(b)(3)........................................ 35

      1.      Predominance............................................................................................... 35

      2.      Superiority.................................................................................................... 37

**CONCLUSION** .................................................................................................................... 39

iv

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)..................................................................29, 35, 38

*Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*,
  133 S. Ct. 1184 (2013)......................................................................36

*In re Auto. Refinishing Paint Antitrust Litig.*,
  617 F. Supp. 2d 336 (E.D. Pa. 2007).................................................25

*In re Automotive Parts Antitrust Litigation*,
  MDL No. 12-md-02311 ...................................................................2, 34

*Bacon v. Honda of Am. Mfg., Inc.*,
  370 F.3d 565 (6th Cir. 2004) ...........................................................30

*Beanie v. CenturyTel, Inc.*,
  511 F.3d 554 (6th Cir. 2007) ...........................................................35

*In re Cardizem CD Antitrust Litig.*,
  218 F.R.D. 508 (E.D. Mich. 2003) .......................................15, 21, 26

*Carson v. Am. Brands, Inc.*,
  450 U.S. 79 (1981)............................................................................16

*Cason-Merenda v. VHS of Mich., Inc.*,
  296 F.R.D. 528 (E.D. Mich. 2013) ...................................................36

*In re Chambers Dev. Sec. Litig.*,
  912 F. Supp. 822 (W.D. Pa. 1995).....................................................19

*Date v. Sony Elecs., Inc.*,
  No. 07-cv-15474, 2013 WL 3945981 (E.D. Mich. Jul. 31, 2013) ....................23

*In re Delphi Corp. Sec., Deriv. & "ERISA" Litig.*,
  248 F.R.D. 483 (E.D. Mich. 2008) ...................................................19

*Dick v. Spring Commc'ns*,
  297 F.R.D. 283 (W.D. Ky. 2014) ....................................... 15-16, 23

*Fidel v. Farley*,
  534 F.3d 508 (6th Cir. 2008) ..............................................................27

*In re Flonase Antitrust Litig.*,
  284 F.R.D. 207 (E.D. Pa. 2012) .........................................................38

*In re Foundry Resins Antitrust Litig.*,
  242 F.R.D. 393 (S.D. Ohio 2007), *abrogated on other grounds by*
  *In re Behr Dayton Thermal Prod., LLC,* No. 3:08-CV-326, 2015
  WL 13651286 (S.D. Ohio Feb. 27, 2015) ....................................*passim*

*Golden v. City of Columbus*,
  404 F.3d 950 (6th Cir. 2005) ..............................................................30

*Grenada Invs., Inc. v. DWG Corp.*,
  962 F.2d 1203 (6th Cir. 1992) ............................................................17

*Griffin v. Flagstar Bancorp, Inc.*,
  No. 2:10-cv-10610, 2013 WL 6511860 (E.D. Mich. Dec. 12, 2013) ....15, 24, 30

*Grunin v. Int'l House of Pancakes*,
  513 F.2d 114 (8th Cir. 1975) ..............................................................27

*Int'l Union, UAW v. Ford Motor Co.*,
  No. 05-cv-74730, 2006 WL 1984363 (E.D. Mich. July 13, 2006) ...................16

*IUE-CWA v. Gen. Motors Corp.*,
  238 F.R.D. 583 (E.D. Mich. 2006) ........................................15, 16, 18

*Marcus v. Dep't of Revenue*,
  206 F.R.D. 509 (D. Kan. 2002) ...........................................................33

*In re NASDAQ Market-Makers Antitrust Litig.*,
  169 F.R.D. 493 (S.D.N.Y. 1996) .........................................................38

*In re Packaged Ice Antitrust Litig.*,
  No. 08-md-01952, 2011 WL 717519 (E.D. Mich. Feb. 22, 2011).............*passim*

*Paper Sys. Inc. v. Mitsubishi Corp.*,
  193 F.R.D. 601 (E.D. Wis. 2000) ........................................................38

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985).............................................................................27

*Reynolds v. Beneficial Nat'l Bank*,
    288 F.3d 277 (7th Cir. 2002) ...............................................................21

*In re Scrap Metal Antitrust Litig.*,
    527 F.3d 517 (6th Cir. 2008) ......................................................... 36-37

*Shane Grp., Inc. v. Blue Cross Blue Shield*,
    825 F.3d 299 (6th Cir. 2017) ...............................................................18

*Sheick v. Auto. Component Carrier LLC*,
    No. 2:09-cv-14429, 2010 WL 4136958 (E.D. Mich. Oct. 18, 2010) .....18, 24, 28

*Stoetzner v. U.S. Steel Corp.*,
    897 F.2d 115 (3d Cir. 1990) ...............................................................25

*Taifa v. Bayh*,
    846 F. Supp. 723 (N.D. Ind. 1994) .....................................................25

*TBK Partners, Ltd. v. W. Union Corp.*,
    675 F.2d 456 (2d Cir. 1982) ...............................................................25

*In re Telectronics Pacing Sys. Inc.*,
    137 F. Supp. 2d 985 (S.D. Ohio 2001) ........................................15, 18

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    267 F.R.D. 583 (N.D. Cal. 2010) .......................................................31

*UAW v. Gen. Motors Corp.*,
    497 F.3d 615 (6th Cir. 2007) ...............................................15, 27, 28

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
    722 F.3d 838 (6th Cir. 2013) ...............................................29, 35, 36

*Wong v. Accretive Health, Inc.*,
    773 F.3d 859 (7th Cir. 2014) ...............................................................21

**Statutes**

Class Action Fairness Act, 28 U.S.C. § 1711 *et seq.* ................................................29

Class Action Fairness Act, 28 U.S.C. § 1715(b) ....................................................29

## Rules

Fed. R. Civ. P. 23 ......................................................................................*passim*

Fed. R. Civ. P. 23(a)..............................................................29, 30, 32

Fed. R. Civ. P. 23(a)(3).........................................................................32

Fed. R. Civ. P. 23(a)(4).........................................................................32

Fed. R. Civ. P. 23(b) ............................................................................29

Fed. R. Civ. P. 23(b)(3)..........................................................27, 35, 36, 37

Fed. R. Civ. P. 23(c)(2)(B) ...............................................................27, 28

Fed. R. Civ. P. 23(e).........................................................................17, 26

Fed. R. Civ. P. 23(e)(1)......................................................................26-27

Fed. R. Civ. P. 23(g) .............................................................................33

## Other Authorities

John M. Connor & Robert H. Lande, *Not Treble Damages: Cartel Recoveries Are Mostly Less than Single Damages*, 100 IOWA L. REV. 1997, 2010 (2015) ......................................................................8

THE LAW AND ECONOMICS OF CLASS ACTIONS 249 (James Langenfeld ed., 2014) .........................................................................8

MANUAL FOR COMPLEX LITIGATION § 21.311 (4th Ed. 2004)................................27

**Introduction**

Settlement Class Counsel ("Settlement Class Counsel") for the End-Payor Plaintiffs ("EPPs") respectfully seek final approval of the settlements between EPPs and the Bosal, Bosch, and TRW Defendants ("Round 5 Settlements") in the above-captioned actions ("Actions").

EPPs have settled with the last three Defendant families ("Round 5 Settling Defendants") named in this massive litigation.[1] The Round 5 Settlements collectively provide $3,152,000 in cash for the benefit of the settlement classes included in the Round 5 Settlements ("Round 5 Settlement Classes"), and require Bosch and TRW to provide substantial discovery cooperation to the EPPs, which will only be necessary in the event that any other settlement in the Actions does not receive final approval or if EPPs name a new Defendant in the Actions[2]. The Round 5 Settlements also provide that all Round 5 Settling Defendants, with the exception of Bosal, will for a period of two years refrain from engaging in certain specified

---

[1] The Round 5 Settling Defendants include: (1) ZF TRW Automotive Holdings Corp, ZF Friedrichshafen AG (the successor in interest into which TRW KFZ Ausrüstung GmbH merged), and Lucas Automotive GmbH (now known as ZF Active Safety GmbH) (collectively, "TRW"); (2) Robert Bosch GmbH and Robert Bosch LLC (together, "Bosch"); and Bosal Industries Georgia, Inc. and Bosal USA, Inc. (together, "Bosal").

[2] EPPs do not intend on naming any new Defendants in the Actions. The Round 5 Settlements are the final three settlements in the EPP Actions.

conduct that would violate the antitrust laws involving the automotive parts at issue in the Actions.

The Round 5 Settlements are the product of Settlement Class Counsel's very successful efforts to finally resolve the EPPs' claims against the Defendants in *In re Automotive Parts Antitrust Litigation*, MDL No. 12-md-02311 ("*Auto Parts Litigation*"). This Court previously granted EPPs' Motion for Final Approval of Settlements with Certain Defendants ("Round 1 Settlements"), *see, e.g.*, Amended Opinion and Order Granting Final Approval of Class Action Settlement, *Wire Harness*, 12-cv-00103, ECF No. 512 ("Round 1 Final Approval Order"); EPPs' Motion for Orders Granting Final Approval of the Round 2 Settlements and Approving the Plan of Allocation in Connection with the Round 2 Settlements ("Round 2 Settlements"), *see, e.g.*, Order Granting Final Approval to the Round 2 Settlements, *Wire Harness*, 12-cv-00103, ECF No. 576 ("Round 2 Final Approval Order"); EPPs' Motion for Orders Granting Final Approval of the Round 3 Settlements and Approving the Plan of Allocation in Connection with the Round 3 Settlements ("Round 3 Settlements"), *see, e.g.*, Order Granting Final Approval to the Round 3 Settlements, *Wire Harness*, 12-cv-00103, ECF No. 628 ("Round 3 Final Approval Order"); and EPPs' Motion for Orders Granting Final Approval of the Round 4 Settlements and Approving the Plan of Allocation in Connection with the Round 4 Settlements ("Round 4 Settlements"), *see, e.g.*, Order Granting Final

2

Approval of the Round 4 Settlements, *Heater Control Panels*, 12-cv-00403, ECF No. 319 ("Round 4 Final Approval Order").

The Round 1 Settlements made available $224,668,350 in cash for the benefit of the settlement classes included in the Round 1 Settlements ("Round 1 Settlement Classes"). They also required the 11 Defendant families that were parties to those settlements ("Round 1 Settling Defendants") to provide cooperation to EPPs. The Round 1 Settlements also provided that several Round 1 Settling Defendants would for a period of two years refrain from engaging in certain specified conduct that would violate the antitrust laws involving the automotive parts at issue in those actions.  In granting final approval of the Round 1 Settlements, the Court concluded that: (1) the Round 1 Settlements were fair, reasonable, and adequate and provided significant benefits to the Round 1 Settlement Classes; and (2) the requirements of Rule 23 were met for settlement purposes. *See, e.g.*, Round 1 Final Approval Order at 15-26, 26-27.

The Round 2 Settlements made available $379,401,268 in cash for the benefit of the settlement classes included in the Round 2 Settlements ("Round 2 Settlement Classes"). They also required the 12 Defendant families that were parties to those settlements ("Round 2 Settling Defendants") to provide cooperation to EPPs. The Round 2 Settlements also provided that with one exception, each of the Round 2 Settling Defendants would for a period of two years refrain from engaging in certain

3

specified conduct that would violate the antitrust laws involving the automotive parts at issue in those actions.  In granting final approval of the Round 2 Settlements, the Court concluded that: (1) the Round 2 Settlements were fair, reasonable, and adequate and provided significant benefits to the Round 2 Settlement Classes; and (2) the requirements of Rule 23 were met for settlement purposes. *See, e.g.*, Round 2 Final Approval Order at 8-23, 23-26.

The Round 3 Settlements made available $432,823,040 in cash for the benefit of the settlement classes included in the Round 3 Settlements ("Round 3 Settlement Classes"). They also required the 33 Defendant families that were parties to those settlements ("Round 3 Settling Defendants") to provide cooperation to EPPs. The Round 3 Settlements also provided that with limited exceptions, each of the Round 3 Settling Defendants would for a period of two years refrain from engaging in certain specified conduct that would violate the antitrust laws involving the automotive parts at issue in those actions. In granting final approval of the Round 3 Settlements, the Court concluded that: (1) the Round 3 Settlements were fair, reasonable, and adequate and provided significant benefits to the Round 3 Settlement Classes; and (2) the requirements of Rule 23 were met for settlement purposes. *See, e.g.*, Round 3 Final Approval Order at 9-22.

The Round 4 Settlements made available $183,958,000 in cash for the benefit of the settlement classes included in the Round 4 Settlements ("Round 4 Settlement

Classes"). They also required the 17 Defendant families that were parties to those settlements ("Round 4 Settling Defendants") to provide cooperation to EPPs.[3] The Round 4 Settlements also provided that, with two exceptions, each of the Round 4 Settling Defendants would for a period of two years refrain from engaging in certain specified conduct that would violate the antitrust laws involving the automotive parts at issue in those actions. In granting final approval of the Round 4 Settlements, the Court concluded that: (1) the Round 4 Settlements were fair, reasonable, and adequate and provided significant benefits to the Round 4 Settlement Classes; and (2) the requirements of Rule 23 were met for settlement purposes. *See, e.g.*, Round 4 Final Approval Order at 10-21.

As set forth below, the Round 5 Settlements likewise provide an excellent result for the Round 5 Settlement Classes, especially in light of the substantial risks of this massive and exceptionally complex litigation. In negotiating the Round 5 Settlements, Settlement Class Counsel[4] took into account the amounts of the

---

[3] Pursuant to a settlement with TKH reached in its bankruptcy proceeding, Settlement Class Counsel secured a $53,200,000 authorized claim against TKH, but expect to receive only a small fraction of this amount for distribution to the class. Because the ultimate settlement amount in connection with the TKH settlement remains undetermined at this time, this figure was not included in Settlement Class Counsels' calculation of the total amount of the Round 4 settlement proceeds.

[4] In granting preliminary approval of each of the Round 5 Settlements, the Court preliminarily appointed Cotchett, Pitre & McCarthy, LLP, Robins Kaplan LLP, and Susman Godfrey L.L.P. as Settlement Class Counsel. *See* Order Granting End-Payor Plaintiffs' Motion for Preliminary Approval of Proposed Settlement with the TRW Defendants and Provisional Certification of Settlement Class at ¶ 7, *Hydraulic*

respective Round 5 Settlements, available evidence supporting EPPs' claims, to the extent available, the relevant dollar volume of the commerce underlying the particular Round 5 Settling Defendant's conduct to the extent available, the defenses that the Round 5 Settling Defendants raised or were expected to raise, and the value provided by the Round 5 Settling Defendants' agreements to cooperate with EPPs. Settlement Class Counsel therefore respectfully submit that the proposed Round 5 Settlements are fair, reasonable, and adequate, and should be granted final approval.

Notice of the Round 5 Settlements was provided through the notice plan approved by the Court on August 10, 2022 ("Round 5 Notice Program"). *See* Declaration of Cristen Stephansky on Implementation of the Round 5 Notice Program ("Stephansky Decl."), ¶¶ 2-9 & Ex. 1 (confirming that notice was given to potential settlement class members in the manner approved by the Court); Declaration of Brian A. Pinkerton Regarding Dissemination of Round 5 Notice and Settlement Administration ("Pinkerton Decl.") ¶¶ 8-14 & Exs. B-C (confirming notice was mailed and/or emailed to potential class members previously registered).

---

*Braking Systems*, 2:21-cv-04503, ECF No. 1; Order Granting End-Payor Plaintiffs' Motion for Preliminary Approval of Proposed Settlement with the Bosch Defendants and Provisional Certification of Settlement Classes at ¶ 7, *Hydraulic Braking Systems*, 2:21-cv-04503, ECF No. 2; Order Granting Preliminary Approval of Settlement with Bosch at ¶ 7, *Electronic Braking Systems*, 2:21-cv-04403, ECF No. 1; Order Granting End-Payor Plaintiffs' Motion for Preliminary Approval of Proposed Settlement with Bosal Industries Georgia, Inc. and Bosal USA, Inc. and Provisional Certification of Settlement Class at ¶ 7, *Exhaust Systems*, 2:16-cv-03703, ECF No. 201.

The response from members of the Round 5 Settlement Classes has been positive. As of November 16, 2022, there have been no objections to, or requests for exclusion from, the Round 5 Settlements. *See* Pinkerton Decl. ¶¶ 16-17. As set forth in the Round 5 Notice Program, Round 5 Settlement Class Members have until December 20, 2022 to object to or request exclusion from the Round 5 Settlement Classes. *See, e.g.*, *Exhaust Systems*, 2:16-cv-03703, ECF No. 168.

To effectuate the Round 5 Settlements, it is also respectfully requested that the Court grant final certification to the Round 5 Settlement Classes, which it has already provisionally certified for settlement purposes. The Round 5 Settlement Classes meet all of the requirements for certification as settlement classes and should be granted final certification. It is further requested that the Court confirm the appointment of Cotchett, Pitre & McCarthy, LLP, Robins Kaplan LLP, and Susman Godfrey L.L.P. as Settlement Class Counsel for the Round 5 Settlement Classes.

## Background

### I. The Round 5 Settlements Provide Substantial Benefits to EPPs

### A. Cash Components of the Round 5 Settlements

The Round 5 Settlement amounts total $3,152,000. TRW has agreed to pay $760,000, Bosch has agreed to pay $2,242,000, and Bosal has agreed to pay $150,000. As part of each settlement negotiation, EPPs considered the available evidence regarding the Round 5 Settling Defendant's conduct as to each relevant

class, and to the extent available, the estimated dollar amount of commerce affected by that conduct. *See* Joint Declaration of William V. Reiss, Adam J. Zapala, and Marc M. Seltzer in Support of End-Payor Plaintiffs' Motion for Order Granting Final Approval of the Round 5 Settlements ("Joint Decl.") ¶ 16, submitted herewith. In the opinion of Settlement Class Counsel, the Round 5 Settlements are an excellent result for the Round 5 Settlement Classes and are fair, reasonable, and adequate. *Id.* ¶¶ 18-19.

Given the complexity of the Actions and the barriers to final relief, the Round 5 Settlements provide meaningful relief to the Round 5 Settlement Classes. In most instances, Settlement Class Counsel were able to take into account an estimated amount of the dollar volume of relevant commerce attributable to the Round 5 Settling Defendants. Settlement Class Counsel also obtained financial information from the Round 5 Settling Defendants and third parties; academic studies regarding cartel overcharges and typical recovery, *see, e.g.*, John M. Connor & Robert H. Lande, *Not Treble Damages: Cartel Recoveries Are Mostly Less than Single Damages*, 100 IOWA L. REV. 1997, 2010 (2015) (analyzing successful antitrust recoveries); John M. Connor, *Cartel Overcharges*, in 26 THE LAW AND ECONOMICS OF CLASS ACTIONS 249, 290 (James Langenfeld ed., 2014); and expert analysis of likely damages, *cf.* Declaration of Janet S. Netz, Ph.D., in Support of Automobile Dealership and End-Payor Plaintiffs' Opposition to KYB Defendants' Motion for

Summary Judgment on the Pass-Through Issue, *Shock Absorbers*, No. 15-cv-03303, ECF No. 59-2. *See* Joint Decl. ¶¶ 15-16.

### B. Cooperation and Other Terms of the Round 5 Settlements

In addition to the cash payments totaling $3,152,000, the Round 5 Settling Defendants are required to provide EPPs with various forms of valuable cooperation, most of which will not be necessary unless one or more settlements in the relevant Action do not receive final approval. Those terms were described in EPPs' preliminary approval motions and are set forth at length in the written settlement agreements.[5]

All the Round 5 Settling Defendants agreed to identify the relevant vehicles. With the exception of Bosal, each of the Round 5 Settling Defendants also agreed, as reasonably necessary for the prosecution of the particular Action to: (1) use best efforts to complete the production of transactional data and certain other documents; (2) provide attorneys' proffers; (3) make witnesses available for interviews, depositions, and trial; and (4) facilitate the use of information at trial. *See, e.g.,* Settlement Agreement with TRW at Section F, *Hydraulic Braking Systems*, 2:21-cv-11993, ECF No. 3-1; Settlement Agreement with Bosch at Section F, *Electronic Braking Systems*, 2:21-cv-11989, ECF No. 2-1.

---

[5] All relevant documents are publicly available on the settlement website at www.autopartsclass.com.

With the exception of Bosal, the Round 5 Settling Defendants have also agreed not to engage in certain specified conduct for a period of two years that would violate antitrust laws. *See, e.g.,* Settlement Agreement with TRW at ¶ 28, *Hydraulic Braking Systems*, 2:21-cv-11993, ECF No. 3-1 (conduct involving the sale of Hydraulic Braking Systems)[6]; Settlement Agreement with Bosch at ¶ 28, *Electronic Braking Systems*, 2:21-cv-11989, ECF No. 2-1 (conduct involving Hydraulic Braking Systems and Electronic Braking Systems).

In exchange for the cash payments, equitable relief (excluding Bosal), and cooperation described above, EPPs have agreed to release their claims against the Round 5 Settling Defendants and their affiliates (together, the "Releasees," who are further defined in the Round 5 Settlement Agreements).

The Round 5 Settlements are the product of lengthy arm's-length negotiations between counsel who are experienced in prosecuting and defending complex antitrust class action cases. Joint Decl. ¶ 12. The Round 5 Settlements were all negotiated over an extended period of time by Settlement Class Counsel and counsel for the Round 5 Settling Defendants, through multiple telephonic meetings and correspondence and in one instance through use of an experienced mediator as well as the Settlement Master. *See, e.g.*, *id.* In preparation for these negotiations,

---

[6] Unless otherwise set forth herein, all defined terms shall have the meaning set forth in the respective settlement agreements.

Settlement Class Counsel undertook a diligent and thorough investigation of the legal and factual issues presented by this litigation. *Id.* ¶¶ 12, 15-19. Thus, Settlement Class Counsel were well informed as to the relevant facts and the strengths of EPPs' claims when the Round 5 Settlements were negotiated.

## II.   The Round 5 Notice Program Was Carried Out and Provided Adequate Notice

The Round 5 Settlements provide monetary and non-monetary benefits for members of the Round 5 Settlement Classes who: (1) purchased or leased a qualifying new Vehicle[7] in the U.S. (not for resale), which contains one or more Hydraulic Braking System[s], Electronic Braking System[s], or Exhaust System[s]; or (2) indirectly purchased one or more Hydraulic Braking System[s], Electronic Braking System[s] or Exhaust System[s] as a replacement part. The monetary benefits of the Round 5 Settlements will be made available to the members of the Round 5 Settlement Classes in the jurisdictions that allow EPPs to seek money

---

[7] In general, qualifying vehicles include four-wheeled passenger automobiles, cars, light trucks, pickup trucks, crossovers, vans, mini-vans, and sport utility vehicles (collectively, "Vehicles"). *See* Settlement Agreement with TRW at ¶ 17, *Hydraulic Braking Systems*, 2:21-cv-11993, ECF No. 3-1 ("'Vehicles' shall refer to four-wheeled passenger automobiles, vans, sports utility vehicles, and crossover or pick-up trucks."); Settlement Agreement with Bosch at ¶ 16, *Electronic Braking Systems*, 2:21-cv-11989, ECF No. 2-1 (same); Settlement Agreement with Bosal at ¶ 15, *Exhaust Systems*, 2:16-cv-03703, ECF No. 200-1 ("'Vehicles' shall refer to new four-wheeled passenger automobiles, vans, sports utility vehicles, and crossover or pick-up trucks.").

damages or restitution.[8] Through a preeminent class action notice consultant, Kinsella Media, LLC ("Kinsella"), EPPs implemented the Round 5 Notice Program,[9] which the Court approved.[10] *See, e.g., Heater Control Panels*, 2:12-cv-00403, ECF No. 291. Kinsella and Epiq—the successor to Garden City Group, the

---

[8] Those jurisdictions are: Arizona, Arkansas, California, the District of Columbia, Florida, Hawaii, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin.

[9] Pursuant to the Court's Orders, Kinsella previously implemented a notice program to provide notice of the Round 1 Settlements ("Combined Notice Program") to potential members of the Round 1 Settlement Classes, *see, e.g.*, Combined Notice Order, *Wire Harness,* 2:13-cv-00103, ECF No. 421; notice of the Round 2 Settlements to potential members of the Round 2 Settlement Classes, *see, e.g.*, Order Granting End-Payor Plaintiffs' Unopposed Motion for Authorization to Disseminate September 2016 Notice and Claim Form to the End-Payor Plaintiffs Settlement Classes, *Wire Harness,* 2:13-cv-00103, ECF No. 535; notice of the Round 3 Settlements to potential members of the Round 3 Settlement Classes, *see, e.g.*, Order Granting EPPs' Unopposed Motion for Authorization to Disseminate March 2018 Notice to the End-Payor Plaintiffs Settlement Classes, *Wire Harness*, Case No. 2:12-cv-00103, ECF No. 601; and notice of the Round 4 Settlements to potential members of the Round 4 Settlement Classes, *see, e.g.*, Order Granting End-Payor Plaintiffs' Second Amended Unopposed Motion for Authorization to Disseminate July 2019 Notice to the End-Payor Plaintiff Settlement Classes, *Exhaust Systems*, 2:16-cv-03703, ECF No. 168.

[10] In addition to approving the September 2016 Notice Program, the Court authorized Settlement Class Counsel to disseminate a Claim Form to potential members of the Round 1 and Round 2 Settlement Classes. *See Auto Parts Master Docket*, 2:12-md-02311, ECF No. 1473. The Court similarly authorized Settlement Class Counsel to disseminate a Claim form to potential members of the Round 3 and Round 4 Settlement Classes. *See, e.g., Wire Harness*, Case No. 2:12-cv-00103, ECF No. 601; *Exhaust Systems*, 2:16-cv-03703, ECF No. 168. Potential members of the Round 5 Settlement Classes may submit claims electronically by completing the Claim Form online at www.AutoPartsClass.com or in paper form by downloading the form and completing and mailing it to Epiq. Pinkerton Decl. ¶¶ 4-5, 15.

Court-appointed settlement administrator—implemented each element of the Round 5 Notice Program. *See* Stephansky Decl. ¶ 2-9; Pinkerton Decl. ¶¶ 2, 4-15. The Court-approved Round 5 Notice Program included individual notice to potential members who had previously registered on the website. Pinkerton Decl. ¶¶ 8-14; Stephansky Decl. ¶¶ 3. The Round 5 Notice Program also included paid media (including targeted internet and banner advertisements), earned media, sponsored keywords with all major search engines, and continued use of and updates to the settlement website and toll-free telephone number. Stephansky Decl. ¶¶ 4-9.

Members of the Round 5 Settlement Classes can contact a toll-free helpline, which is maintained by Epiq. *See* Pinkerton Decl. ¶ 7. The website provides answers to frequently asked questions, important deadlines, a list of the Round 5 Settling Defendants, and access to important documents, such as the long form notice and relevant Court filings. *Id.* ¶ 4. The website contains a list of all of the vehicles known to be within any of the Round 5 Settlement Classes. The website has been operational since October 12, 2015, and is accessible 24 hours a day, seven days a week. *Id.* As of November 16, 2022, the website had received 3,774,452 visits from 3,148,634 unique visitors. *Id.* ¶ 6. Epiq also sent an email notice to each of the 195,219 individuals and businesses who previously registered on the Settlement Website or

13

filed a claim and for whom Epiq had a valid email address[11] and mailed a postcard notice to each of the 122,630 individuals and businesses who had previously registered on the settlement website but did not provide an email address or whose email address was undeliverable. *Id.* ¶¶ 13-14.

### III. The Reaction of Members of the Round 5 Settlement Classes Has Been Positive

The reaction of the members of the Round 5 Settlement Classes has been positive. Members of the Round 5 Settlement Classes have until December 20, 2022 to object to the Round 5 Settlements or Plan of Allocation or exclude themselves from the Round 5 Settlement Classes. As of November 16, 2022, Epiq has not received any: (1) objections to or requests for exclusion from the Round 5 Settlements, *id.* ¶¶ 16-17; or (2) objections to the Plan of Allocation, *id.* ¶ 17.

All persons or businesses that purchased or leased one of the categories of Vehicles or replacement parts described in the Round 5 Notice Program were placed on notice that they may be members of the Round 5 Settlement Classes, and that they are free to appear, object or exclude themselves as they choose.

---

[11] The email alert was deliverable to 147,912 individuals and businesses. For all individuals and businesses for whom the email alert bounced back as undeliverable, Epiq mailed them a postcard notice to the extent Epiq had their mailing address. *Id.* ¶ 13. 47,307 Email Notices could not be delivered. *Id.*

## **Legal Standard**

"[T]he law favors the settlement of class action lawsuits." *Griffin v. Flagstar Bancorp, Inc.*, No. 2:10-cv-10610, 2013 WL 6511860, at *2 (E.D. Mich. Dec. 12, 2013). As a result, "the role of the district court is limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 594 (E.D. Mich. 2006) (internal quotes omitted).

After preliminary approval, notice of the proposed settlement must be given to the settlement class members, and the court must hold a hearing before granting final approval. *In re Telectronics Pacing Sys. Inc.*, 137 F. Supp. 2d 985, 1026 (S.D. Ohio 2001) (citing *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983)). The ultimate question is "whether the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 522 (E.D. Mich. 2003) (citation omitted). In reaching that determination, the court has broad discretion to approve a class action settlement. *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 636 (6th Cir. 2007). In exercising this discretion, courts give considerable weight and deference to the view of experienced counsel regarding the merits of an arm's-length settlement. *Dick v.*

*Spring Commc'ns*, 297 F.R.D. 283, 297 (W.D. Ky. 2014) ("The Court defers to the judgment of the experienced counsel associated with the case, who have assessed the relative risks and benefits of litigation.").

Because a settlement represents an exercise of judgment by the negotiating parties, a court reviewing a settlement will not "substitute [its] judgment for that of the litigants and their counsel." *IUE-CWA*, 238 F.R.D. at 594 (quotations omitted). Nor will it "decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981). Instead, courts evaluate the plaintiffs' recovery in light of the fact that a settlement "represents a compromise in which the highest hopes for recovery are yielded in exchange for certainty and resolution." *Int'l Union, UAW v. Ford Motor Co.*, No. 05-cv-74730, 2006 WL 1984363, at *23 (E.D. Mich. July 13, 2006).

## <u>Argument</u>

### I. The Round 5 Settlements Are Fair, Reasonable, and Adequate and Should Receive Final Approval

The Round 5 Settlements meet the criteria for final approval under Federal Rule of Civil Procedure 23. They provide meaningful benefits to the members of the Round 5 Settlement Classes, and they were reached after arm's-length negotiations between experienced counsel who had sufficient information about the merits of, and defenses to the claims asserted in the Actions. The Round 5 Settlements reflect

a reasonable compromise in light of the procedural, liability, and damages questions facing both EPPs and the Round 5 Settling Defendants.

Courts in the Sixth Circuit consider the following factors when determining whether to grant final approval of a class action settlement: (1) the likelihood of success on the merits, weighed against the amount and form of the relief offered in the settlement; (2) the complexity, expense, and likely duration of further litigation; (3) the opinions of class counsel and the class representatives; (4) the amount of discovery engaged in by the parties; (5) the reaction of absent class members; (6) the risk of fraud or collusion; and (7) the public interest. *In re Packaged Ice Antitrust Litig.*, No. 08-md-01952, 2011 WL 717519, at *8 (E.D. Mich. Feb. 22, 2011). The district court has wide discretion in assessing the weight and applicability of these factors. *Grenada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205-06 (6th Cir. 1992). Pursuant to Rule 23(e), the Court may approve a proposal that would bind class members if "the class representatives and class counsel have adequately represented the class," "the proposal was negotiated at arm's length," "the relief provided for the class is adequate," and "the proposal treats class members equitably relative to each other."

## A. The Likelihood of EPPs' Success on the Merits, Weighed Against the Relief Provided by the Round 5 Settlements, Supports Final Approval

Courts assess class action settlements "with regard to a 'range of reasonableness,' which 'recognizes the uncertainties of law and fact in any particular

case and the concomitant risks and costs inherent in taking any litigation to completion.'" *Sheick v. Auto. Component Carrier LLC*, No. 2:09-cv-14429, 2010 WL 4136958, at *15 (E.D. Mich. Oct. 18, 2010) (quoting *IUE-CWA*, 238 F.R.D. at 594). "[S]ettlement avoids the costs, delays, and multitude of other problems associated with them." *Telectronics*, 137 F. Supp. 2d at 1013. When considering the likelihood of plaintiffs' success on the merits of the litigation, the ultimate question is whether the interests of the class as a whole are better served if the litigation is resolved by settlement rather than pursued to trial and judgment. *Sheick*, 2010 WL 4136958, at *15. In answering that question, the district court "must carefully scrutinize whether the named plaintiffs and counsel have met their fiduciary obligations to the class and whether the settlement itself is fair, reasonable, and adequate." *Shane Grp., Inc. v. Blue Cross Blue Shield*, 825 F.3d 299, 309 (6th Cir. 2017) (internal citations omitted).

EPPs believe they will prevail in the Actions. EPPs nonetheless recognize that success at trial is not guaranteed. Although EPPs believe they can prove the existence of Defendants' alleged illegal bid-rigging and price-fixing conspiracies, the Round 5 Settling Defendants are represented by some of the leading law firms across the country. Bosal has vigorously defended itself in the *Exhaust Systems* Action and TRW and Bosch have done the same in prior actions filed by EPPs against them in the *Auto Parts Litigation*. There is no question that the Round 5

Settling Defendants will continue to vigorously and ably defend themselves in the event the Court were to reject the settlements. Critically, unlike many of the prior settlements reached in the *Auto Parts Litigation*, none of the Round 5 Settling Defendants have been prosecuted in the U.S. for the parts at issue in the Round 5 Settlements, let alone pleaded guilty to engaging in anticompetitive conduct with respect to the sale of these parts.  Absent the Round 5 Settlements, the Round 5 Settling Defendants would, in addition to vigorously challenging liability, oppose EPPs' motions for class certification, move for summary judgment on numerous issues, and raise defenses to EPPs' claims at trial, should the Actions proceed to trial. Even if EPPs successfully established the Round 5 Settling Defendants' violations of the law, the Round 5 Settling Defendants would offer expert testimony challenging the impact of their conduct and supporting their contention that the EPPs suffered no damages. EPPs would have to show that the Round 5 Settling Defendants' illegal overcharges were passed on through multiple levels of indirect purchasers. EPPs believe they would prevail on all of these issues at trial and that any recovery would be affirmed on appeal, but the Round 5 Settlements avoid the risks of further litigation and ensure a large recovery for members of the Round 5 Settlement Classes. Given these risks, "[a] very large bird in the hand in this litigation is surely worth more than whatever birds are lurking in the bushes." *In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822, 838 (W.D. Pa. 1995).

19

Moreover, the agreement by each of the Round 5 Settling Defendants with the exception of Bosal not to engage in certain specified conduct for a period of two years that would violate the antitrust laws involving the parts at issue provides value to the members of Round 5 Settlement Classes.

While Settlement Class Counsel have consulted with their experts about damages issues in connection with the Round 5 Settlements, expert analysis of potential damages is not required in order to settle a class action. *See* Newberg on Class Actions § 13:49 (citing *Marshall v. Nat'l Football League*, 787 F.3d 502, 517-18 (8th Cir. 2015) (holding that the district court could approve settlement without finding a specific value for expected recovery of class); *Lane v. Facebook, Inc.*, 696 F.3d 811, 823 (9th Cir. 2012), *cert. denied*, 134 S. Ct. 8 (2013) (rejecting objectors' argument "that the district court was required to find a specific monetary value corresponding to each of the plaintiff class's statutory claims and compare the value of those claims to the proffered settlement award" and holding that "[w]hile a district court must of course assess the plaintiffs' claims in determining the strength of their case relative to the risks of continued litigation, it need not include in its approval order a specific finding of fact as to the potential recovery for each of the plaintiffs' causes of action. Not only would such a requirement be onerous, it would often be impossible—statutory or liquidated damages aside, the amount of damages a given plaintiff (or class of plaintiffs) has suffered is a question of fact that must be proved

at trial. Even as to statutory damages, questions of fact pertaining to which class members have claims under the various causes of action would affect the amount of recovery at trial, thus making any prediction about that recovery speculative and contingent."); *see also Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014) (rejecting the suggestion that a precise damages model is always required; noting that the requirement of an expert damages report "would have resulted in a lengthy and expensive battle of the experts, with the costs of such a battle borne by the class—exactly the type of litigation the parties were hoping to avoid by settling"; and distinguishing *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277 (7th Cir. 2002)).

Settlement Class Counsel believe that the Round 5 Settlements represent an excellent recovery for EPPs. Weighing the benefits of the Round 5 Settlements against the risks of continued litigation tilts the scale heavily toward final approval of the Round 5 Settlements.

## B. The Complexity, Expense, and Likely Duration of Litigation Favor Final Approval

"Settlements should represent a compromise which has been reached after the risks, expense and delay of further litigation have been assessed." *Cardizem*, 218 F.R.D. at 523 (quotation omitted). "[T]he prospect of a trial necessarily involves the risk that Plaintiffs would obtain little or no recovery." *Id.*

Antitrust cases are notoriously protracted and difficult to litigate. Given the complexity of the Actions, any final adjudicated recovery for the Round 5 Settlement

Classes would almost certainly be years away. Should EPPs' claims proceed to trial, the trial would be expensive, time-consuming, and complex, and it would involve testimony from multiple expert witnesses. Moreover, given the high stakes of this litigation, a favorable trial outcome would most definitely be contested on appeal. Each subsequent step in the litigation process would require the Round 5 Settlement Classes to incur additional expenses and risks without any assurance of a more favorable outcome than currently provided by the Round 5 Settlements.

This Court has had substantial opportunity to consider the claims and defenses raised in the *Auto Parts Litigation* and has recognized that complex antitrust litigation of this scope and magnitude has many inherent risks that can be extinguished through settlement. *See, e.g.*, Round 1 Final Approval Order at 13; Round 2 Final Approval Order at 10-11; Round 3 Final Approval Order at 14-15; Round 4 Final Approval Order at 14-15. The fact that EPPs achieved exceptional recoveries to date, which eliminate all risks of continued litigation while ensuring substantial payments for the benefit of the members of the Round 5 Settlement Classes, supports final approval of the settlements. Upon final approval, the Round 5 Settlements would bring EPPs' total recovery to date in this litigation to more than $1.2 billion—the largest indirect purchaser recovery in U.S history.

### C. The Judgment of Experienced Counsel Supports Approval

"The Court should also consider the judgment of counsel and the presence of good faith bargaining between the contending parties." *In re Delphi Corp. Sec., Deriv. & "ERISA" Litig.*, 248 F.R.D. 483, 498 (E.D. Mich. 2008). Counsel's judgment "that settlement is in the best interests of the class is entitled to significant weight, and supports the fairness of the class settlement." *Packaged Ice*, 2011 WL 717519, at *11 (quotation omitted). In a complex class action litigation such as this, the "Court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs." *Date v. Sony Elecs., Inc.*, No. 07-cv-15474, 2013 WL 3945981, at *9 (E.D. Mich. Jul. 31, 2013) (quotation omitted); *see also Dick*, 297 F.R.D. at 296 ("Giving substantial weight to the recommendations of experienced attorneys, who have engaged in arms-length settlement negotiations, is appropriate.") (quotation omitted).

Settlement Class Counsel have decades of experience litigating antitrust class actions and other complex litigation. Similarly, defense counsel are some of the nation's most experienced and skilled antitrust lawyers. Joint Decl. ¶¶ 10, 12. Settlement Class Counsel believe that each of the Round 5 Settlements provides an excellent result for the Round 5 Settlement Classes in light of the circumstances of each Round 5 Settling Defendant's alleged conduct and potential liability. *See id.* ¶¶ 18-19.

In determining whether the judgment of counsel supports final approval of the settlements, a court should consider the amount of discovery completed in the action. *Packaged Ice*, 2011 WL 717519, at *8, 11. There is no baseline required to satisfy this requirement; the "question is whether the parties had adequate information about their claims." *Griffin*, 2013 WL 6511860, at *3 (quotation omitted). That standard is met here. Although formal discovery in each of the Actions has varied, when negotiating each of the Round 5 Settlements, Settlement Class Counsel reviewed documents produced by Defendants, attended attorney proffers, analyzed, where available, the volume of commerce affected by the particular Round 5 Settling Defendant's conduct, and analyzed information from parties and non-parties concerning impact, overcharge, and pass-through. *See* Joint Decl. ¶ 15. This information allowed Settlement Class Counsel to evaluate the strengths and weaknesses of the claims and defenses asserted in the Actions and the benefits of the Round 5 Settlements. Thus, the judgment of Settlement Class Counsel supports final approval of the Round 5 Settlements. *See Sheick*, 2010 WL 4136958, at *18.

## D. The Reaction of Class Members Weighs in Favor of Final Approval

The deadline for class members to object to the Round 5 Settlements or to exclude themselves from the Round 5 Settlement Classes is December 20, 2022. As of November 16, 2022, the website had received visits from 3,148,634 unique visitors, the automated toll-free helpline has received 46,072 calls totaling 266,172

minutes, and, Epiq has fielded 14,127 live calls from potential settlement class members. Pinkerton Decl. ¶¶ 6-7. Yet, as of November 16, 2022, Settlement Class Counsel have received no objections to the Round 5 Settlements, proposed Plan of Allocation for the Round 5 Settlements, or requests for exclusion from any of the Round 5 Settlements. *Id.* ¶¶ 16-17.

The absence of any objections, to date, from members of the Round 5 Settlement Classes supports the adequacy of the Round 5 Settlements. *See, e.g.*, *Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118-19 (3d Cir. 1990) (holding that objections by about 10% of class "strongly favors settlement"); *TBK Partners, Ltd. v. W. Union Corp.*, 675 F.2d 456, 458, 462 (2d Cir. 1982) (approving settlement despite objections of large number of class members); *In re Auto. Refinishing Paint Antitrust Litig.*, 617 F. Supp. 2d 336, 342 (E.D. Pa. 2007) ("The fact that an overwhelming majority of the Class did not file objections is a significant element to consider in determining the overall fairness of the settlements."); *Taifa v. Bayh*, 846 F. Supp. 723, 728 (N.D. Ind. 1994) (approving class settlement despite objections from more than 10% of class). To the extent any objections are received after the filing of this motion, Settlement Class Counsel will address those objections separately.

### E. The Round 5 Settlements Are Consistent with the Public Interest

"[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable and settlement conserves judicial resources." *Cardizem*, 218 F.R.D. at 530 (quotation omitted). The private enforcement of the antitrust laws is facilitated by the Round 5 Settlements, which provides a recovery of over three million dollars to consumers and other end-payors.

### F. The Round 5 Settlements Are the Result of Thorough Arm's-Length Negotiations Conducted by Highly Experienced Counsel

There is a presumption that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion unless there is contrary evidence. *Packaged Ice*, 2011 WL 717519, at *12. The Round 5 Settlements here were reached after adversarial litigation and, with respect to Bosal, after contentious discovery. The negotiations leading to the Round 5 Settlements were conducted entirely at arm's length, and often took many months of hard bargaining to arrive at agreements. *See* Joint Decl. ¶ 12. The Round 5 Settlements were negotiated in good faith, with counsel on each side zealously representing the interests of their clients.

## II. Notice of the Round 5 Settlements Satisfied Rule 23(e) and Due Process

Under Rule 23, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the [proposed settlement]." Fed. R. Civ. P.

23(e)(1). In Rule 23(b)(3) actions, "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Due process requires that absent class members be provided the best notice practicable, reasonably calculated to apprise them of the pendency of the action, and affording them the opportunity to opt out or object. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985); *UAW*, 497 F.3d at 629. The "best notice practicable" standard does not require actual notice, nor does it require direct notice when class members' individual addresses are not readily available or where it is otherwise impracticable. *Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008); MANUAL FOR COMPLEX LITIGATION § 21.311, at 288 (4th Ed. 2004). The mechanics of the notice process "are left to the discretion of the court subject only to the broad 'reasonableness' standards imposed by due process." *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 121 (8th Cir. 1975).

The Round 5 Notice Program was multi-faceted and utilized multiple means of communication. The Round 5 Notice Program used both paid and earned media. Stephansky Decl. ¶¶ 5, 7. It included the following elements: (1) individual notice, *id.* ¶ 3; (2) online media efforts through targeted and Internet advertising on various websites, social media sites, and search engines, *id.* ¶¶ 4-5; (3) earned media efforts through a multimedia news release, press releases, and media outreach, *id.* ¶ 6; and

27

(4) a dedicated settlement website, *id*. ¶ 8. This notice program satisfies the requirements of Rule 23 and due process. *See Packaged Ice*, 2011 WL 717519, at \*14; *Sheick*, 2010 WL 4136958, at \*11-12.

In terms of content, the class notice must contain a summary of the litigation sufficient "to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *UAW*, 497 F.3d at 629 (quotation omitted). The notice must clearly and concisely state: (1) the nature of the action; (2) the class definition; (3) the class claims, issues, or defenses; (4) that a class member may enter an appearance through counsel; (5) that the court will exclude from the class any member who requests exclusion; (6) the time and manner for requesting; and (7) the binding effect of a class judgment on class members. Fed. R. Civ. P. 23(c)(2)(B).

That standard is met here. The Round 5 Notice Program contained both a short and long form notice (together, "Notices"). The Notices were written in simple, plain language to encourage readership and comprehension, and no important information was omitted or missing. *See* Stephansky Decl. ¶ 9. The Notices provided substantial information, including background on the issues in the case, a description of the Plan of Allocation, and specific instructions for members of the Round 5 Settlement Classes to follow to properly exercise their rights, such as their right to opt out or to object to the Round 5 Settlements or Plan of Allocation. *See id.*

III.   **The CAFA Notice Requirement Has Been Satisfied by Each of the Round 5 Settling Defendants**

The Class Action Fairness Act, 28 U.S.C. § 1711 *et seq.* ("CAFA"), requires settling defendants to serve notice of a proposed settlement on the appropriate state and federal officials after a proposed class action settlement is filed with the court. 28 U.S.C. § 1715(b). All of the Round 5 Settling Defendants have provided Settlement Class Counsel with written notice that they have satisfied the CAFA notice requirement. Joint Decl. ¶ 22.

IV.   **The Court Should Certify the Round 5 Settlement Classes**

In its preliminary approval orders, the Court found that Rule 23's requirements were met and provisionally certified each of the Round 5 Settlement Classes. It is well-established that a class may be certified for purposes of settlement. *See, e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997). The settlement class must meet the requirements of Rule 23(a) and at least one subsection of Rule 23(b). *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 850-51 (6th Cir. 2013). Previously, the Court gave final approval and certified the substantially similar settlement classes relating to the Round 1, Round 2, Round 3, and Round 4 Settlements. *See* Round 1 Final Approval Order; Round 2 Final Approval Order; Round 3 Final Approval Order; and Round 4 Final Approval Order. The Court should reach the same result here.

### A. The Round 5 Settlement Classes Satisfy Rule 23(a)

Rule 23(a) is satisfied if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interest of the class. *Griffin*, 2013 WL 6511860, at *6. The Round 5 Settlement Classes meet all of the requirements of Rule 23(a).

#### 1. Numerosity

To establish numerosity, a class representative need only show that joining all members of the potential class is extremely difficult or inconvenient. *Golden v. City of Columbus*, 404 F.3d 950, 965 (6th Cir. 2005). Courts in the Sixth Circuit have recognized that "more than several hundred" class members can satisfy numerosity based simply on the number of potential litigants. *Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004). Here, there are many tens of thousands of members of the Round 5 Settlement Classes, including persons and entities, geographically distributed throughout the United States. Thus, joinder would be impracticable, and numerosity is easily present in the Actions.

#### 2. Commonality

Commonality requires only "one issue whose resolution will advance the litigation by affecting a significant number of the proposed class." *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. 393, 404 (S.D. Ohio 2007), *abrogated on other*

30

*grounds by In re Behr Dayton Thermal Prod., LLC,* No. 3:08-CV-326, 2015 WL 13651286, at *4 (S.D. Ohio Feb. 27, 2015). "Price-fixing conspiracy cases by their very nature deal with common legal and factual questions about the existence, scope, and extent of the alleged conspiracy." *Id.* at 405; *see also In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 593 (N.D. Cal. 2010) ("Where an antitrust conspiracy has been alleged, courts have consistently held that the very nature of a conspiracy antitrust action compels a finding that common questions of law and fact exist.") (internal citation omitted).

The following common questions of law and fact are present in these cases: (1) whether Defendants engaged in a conspiracy to rig bids, fix prices, or allocate the markets for the relevant automotive parts incorporated into Vehicles sold in the United States; (2) the duration of such illegal contracts, combinations, or conspiracies; (3) whether Defendants' conduct resulted in unlawful overcharges on the prices of the relevant automotive parts; and (4) whether such unlawful overcharges were passed on to EPPs. Under settled case law, any one of these issues would suffice to establish commonality. *See, e.g., Packaged Ice*, 2011 WL 717519, at *6 (commonality satisfied by questions concerning "whether Defendants conspired to allocate territories and customers and whether their unlawful conduct caused Packaged Ice prices to be higher than they would have been absent such

illegal behavior and whether the conduct caused injury to the Class Members"). Accordingly, the commonality element is satisfied here.

### 3.    Typicality

Typicality is satisfied when "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "In the antitrust context, typicality is established when the named plaintiffs and all class members alleged the same antitrust violations by defendants." *Foundry Resins*, 242 F.R.D. at 405. In these cases, EPPs and the absent class members are all alleged victims of the alleged conspiracies to fix prices, rig bids, and allocate the market and customers for Hydraulic Braking Systems, Electronic Braking Systems, and/or Exhaust Systems. The same evidence will prove the Round 5 Settling Defendants' liability, and whether the Round 5 Settling Defendants' conduct resulted in unlawful overcharges to EPPs. *See Packaged Ice*, 2011 WL 717519, at *6 (holding that "even if there are factual distinctions among named and absent class members," typicality is met when "all Class Members' claims arise from the same course of conduct, *i.e.* a conspiracy to allocate markets in violation of the Sherman Act").

### 4.    Adequacy

Finally, the representative parties must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requires the class representatives to "have common interests with unnamed members of the class" and to "vigorously

prosecute the interests of the class through qualified counsel." *Foundry Resins*, 242 F.R.D. at 407.

There are no conflicts between EPP class representatives and the members of the Round 5 Settlement Classes because they all have the same interest in establishing liability as a result of their purchases or leases of Vehicles or purchases of replacement parts. *See Packaged Ice*, 2011 WL 717519, at *6 ("Plaintiffs' interests are aligned with the Class Members because they all possess the same interests and have suffered the same type of injury and the class is represented by competent and experienced Class Counsel."). EPP class representatives and the members of the Round 5 Settlement Classes also share a common interest in obtaining the equitable relief obtained from all of the Round 5 Settling Defendants with the exception of Bosal.

Courts also must examine the capabilities and resources of class counsel to determine whether they will provide adequate representation to the class under Federal Rule of Civil Procedure 23(g). *Foundry Resins*, 242 F.R.D. at 407. Here, EPPs are represented by counsel with extensive experience in antitrust and class action litigation. They have vigorously prosecuted the claims of the Round 5 Settlement Classes, and they will continue to do so through all phases of the litigation, including trial. *See Marcus v. Dep't of Revenue*, 206 F.R.D. 509, 512 (D. Kan. 2002) ("In absence of evidence to the contrary, courts will presume the

proposed class counsel is adequately competent to conduct the proposed litigation."). The Court appointed Cotchett, Pitre & McCarthy, LLP, Robins Kaplan LLP, and Susman Godfrey L.L.P. as Interim Co-Lead Class Counsel on behalf of EPPs in all actions coordinated as part of the *Auto Parts Litigation*. Leadership Orders, *Auto Parts Master Docket*, 2:12-md-02311, ECF Nos. 65, 271. The Court also appointed these same firms as Settlement Class Counsel in each of the orders preliminarily approving the Settlement Agreements (s*ee* Order Granting Preliminary Approval of Settlement with TRW at ¶ 7, *Hydraulic Braking Systems*, 2:21-cv-04503, ECF No. 1; Order Granting Preliminary Approval of Settlement with Bosch at ¶ 7, *id.*, ECF No. 2; Order Granting Preliminary Approval of Settlement with Bosch at ¶ 7, *Electronic Braking Systems*, 2:21-cv-04403, ECF No. 1; Order Granting End-Payor Plaintiffs' Motion for Preliminary Approval of Proposed Settlement with Bosal Industries Georgia, Inc. and Bosal USA, Inc. and Provisional Certification of Settlement Class at ¶ 7, *Exhaust Systems*, 2:16-cv-03703, ECF No. 201), and appointed them as Settlement Class Counsel in its orders granting final approval of the Round 1 Settlements, Round 2 Settlements, Round 3 Settlements, and Round 4 Settlements. *See, e.g.*, Round 1 Final Approval Order at 26; Round 2 Final Approval Order at 25; Round 3 Final Approval Order at 21-22; Round 4 Final Approval Order at 21. For the same reasons, the Court should confirm their appointment as Settlement Class Counsel here.

## B. The Round 5 Settlement Classes Satisfy Rule 23(b)(3)

In addition to the requirements of Rule 23(a) discussed above, common questions must predominate over questions affecting only individual class members, and a class action must be superior to other available methods of adjudication. Fed. R. Civ. P. 23(b)(3).

### 1. Predominance

The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. The predominance requirement is met when "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof." *Beanie v. CenturyTel, Inc.*, 511 F.3d 554, 564 (6th Cir. 2007). But plaintiffs need not "prove that each element of the claim is susceptible to classwide proof." *Whirlpool*, 722 F.3d at 859. Instead, predominance is satisfied "when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individualized position." *Foundry Resins*, 242 F.R.D. at 408.

Common questions must predominate, but they do not have to be dispositive of the litigation. *Id.* "[T]he mere fact that questions peculiar to each individual member of the class action remain after the common questions of the defendant's

35

liability have been resolved does not dictate the conclusion that a class action is impermissible." *Cason-Merenda v. VHS of Mich., Inc.*, 296 F.R.D. 528, 535 (E.D. Mich. 2013) (quotation omitted). "Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*, 133 S. Ct. 1184, 1191 (2013) (emphasis in original).

Horizontal price-fixing cases are particularly well suited for class certification because proof of the conspiracy presents a common, predominating question. *See In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 535 (6th Cir. 2008) ("[P]roof of the *conspiracy* is a common question that is thought to predominate over the other issues of the case.") (emphasis in original); *Packaged Ice*, 2011 WL 717519, at *7 ("The allegations of market and customer allocation will not vary among the class members and issues regarding the amount of damages do not destroy predominance."). This is true even if there are individual state law issues, as long as the common issues still outweigh the individual issues—that is, if a common theory can be alleged as to liability and impact that can be pursued by the class. *See, e.g.*, *Whirlpool*, 722 F.3d at 861 ("[I]t remains the 'black letter rule' that a class may obtain certification under Rule 23(b)(3) when liability questions common to the class predominate over damages questions unique to class members." (internal quotation marks and citations omitted)); *Scrap Metal*, 527 F.3d at 535 (where common issues determine liability,

36

the fact that damages calculation may involve individualized issues does not defeat predominance).

Here, the same sets of core operative facts and theories of liability apply to all the Round 5 Settlement Classes' claims. Whether the Settling Defendants entered into illegal agreements to artificially fix prices of Hydraulic Braking Systems, Electronic Braking Systems and Exhaust Systems is a question common to all members of the Round 5 Settlement Classes because it is an essential element of proving an antitrust violation. Common questions also include whether, if such an agreement was reached, the Round 5 Settling Defendants violated the antitrust laws, and whether their acts caused anticompetitive effects. *See, e.g.*, *Packaged Ice*, 2011 WL 717519, at \*6. If EPPs and the absent class members brought individual actions, they would each have to prove the same claims in order to establish liability. For settlement purposes, common issues predominate here.

### 2.    Superiority

In determining whether a class action is the superior method to employ, courts should consider:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3); *Foundry Resins*, 242 F.R.D. at 411.

The *Auto Parts Litigation* has been centralized in this Court. As of November 17, 2022, no members of the Round 5 Settlement Classes have thus far requested exclusion from the Round 5 Settlement Classes. Thus, consideration of the factors listed in subsections (A), (B), and (C) demonstrates the superiority of the Settlement Classes. The last factor, meanwhile, is irrelevant because the potential difficulties in managing a trial are extinguished by the fact of settlement. *Amchem*, 521 U.S. at 620. In addition, the scope and complexity of the *Auto Parts Litigation*—and as a result, the cost to litigate these claims—is enormous. The Round 5 Settlement Classes are largely comprised of individual consumers who purchased or leased a new Vehicle or purchased a replacement part, none of whom could rationally be expected to spend the millions of dollars necessary to pursue their claims resulting from the unlawful overcharges. *See Paper Sys. Inc. v. Mitsubishi Corp.*, 193 F.R.D. 601, 605 (E.D. Wis. 2000) ("Given the complexities of antitrust litigation, it is not obvious that all members of the class could economically bring suits on their own."). Even if class members could afford individual litigation, however, that leaves the alternatives to the Settlement Classes as a multiplicity of separate lawsuits at high cost to the judicial system and private litigants, or no recourse for many class members for whom the cost of pursuing individual litigation would be prohibitive. *See In re Flonase Antitrust Litig.*, 284 F.R.D. 207, 234 (E.D. Pa. 2012); *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 527 (S.D.N.Y. 1996).

Thus, certification of the Settlement Classes is superior to the alternatives in this litigation.

## **Conclusion**

For the foregoing reasons, Settlement Class Counsel respectfully request that the Court: (1) grant final approval of the Round 5 Settlements; (2) grant final certification of the Round 5 Settlement Classes for settlement purposes only; and (3) confirm the appointment of Cotchett, Pitre & McCarthy, LLP, Robins Kaplan LLP, and Susman Godfrey L.L.P. as Settlement Class Counsel for the Round 5 Settlements.

Dated: November 18, 2022

Respectfully submitted,

*/s/ William V. Reiss*
William V. Reiss
**ROBINS KAPLAN LLP**
1325 Avenue of the Americas, Suite 2601
New York, NY 10019
Telephone: (212) 980-7400
Facsimile: (212) 980-7499
WReiss@RobinsKaplan.com

*/s/ Elizabeth T. Castillo*
Adam J. Zapala
Elizabeth T. Castillo
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
azapala@cpmlegal.com
ecastillo@cpmlegal.com

*/s/ Marc M. Seltzer*
Marc M. Seltzer
Steven G. Sklaver
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com

Terrell W. Oxford
Chanler Langham
**SUSMAN GODFREY L.L.P.**
1000 Louisiana Street, Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
toxford@susmangodfrey.com
clangham@susmangodfrey.com

*Settlement Class Counsel for the Proposed
End-Payor Plaintiff Settlement Classes*

40

E. Powell Miller
Devon P. Allard
**THE MILLER LAW FIRM, P.C.**
The Miller Law Firm, P.C.
950 W. University Dr., Ste. 300
Rochester, Michigan 48307
epm@millerlawpc.com
dpa@millerlawpc.com

*Liaison Counsel for the Proposed End-Payor Plaintiff Settlement Classes*

41

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 18, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ William V. Reiss
William V. Reiss