# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| IN RE: AUTOMOTIVE PARTS ANTITRUST | Case No. 12-md-02311 |
| | Hon. Sean F. Cox |

| | |
|---|---|
| IN RE: WIRE HARNESS SYSTEMS | Case No. 2:12-cv-00103 |
| IN RE: INSTRUMENT PANEL CLUSTERS | Case No. 2:12-cv-00203 |
| IN RE: FUEL SENDERS | Case No. 2:12-cv-00303 |
| IN RE: HEATER CONTROL PANELS | Case No. 2:12-cv-00403 |
| IN RE: BEARINGS | Case No. 2:12-cv-00503 |
| IN RE: OCCUPANT SAFETY SYSTEMS | Case No. 2:12-cv-00603 |
| IN RE: ALTERNATORS | Case No. 2:13-cv-00703 |
| IN RE: ANTI-VIBRATIONAL RUBBER PARTS | Case No. 2:13-cv-00803 |
| IN RE: WINDSHIELD WIPER SYSTEMS | Case No. 2:13-cv-00903 |
| IN RE: RADIATORS | Case No. 2:13-cv-01003 |
| IN RE: STARTERS | Case No. 2:13-cv-01103 |
| IN RE: AUTOMOTIVE LAMPS | Case No. 2:13-cv-01203 |
| IN RE: SWITCHES | Case No. 2:13-cv-01303 |
| IN RE: IGNITION COILS | Case No. 2:13-cv-01403 |
| IN RE: MOTOR GENERATORS | Case No. 2:13-cv-01503 |
| IN RE: STEERING ANGLE SENSORS | Case No. 2:13-cv-01603 |
| IN RE: HID BALLASTS | Case No. 2:13-cv-01703 |
| IN RE: INVERTERS | Case No. 2:13-cv-01803 |
| IN RE: ELECTRONIC POWERED STEERING ASSEMBLIES | Case No. 2:13-cv-01903 |
| IN RE: AIR FLOW METERS | Case No. 2:13-cv-02003 |
| IN RE: FAN MOTORS | Case No. 2:13-cv-02103 |
| IN RE: FUEL INJECTION SYSTEMS | Case No. 2:13-cv-02203 |
| IN RE: POWER WINDOW MOTORS | Case No. 2:13-cv-02303 |
| IN RE: AUTOMATIC TRANSMISSION FLUID WARMERS | Case No. 2:13-cv-02403 |
| IN RE: VALVE TIMING CONTROL DEVICES | Case No. 2:13-cv-02503 |
| IN RE: ELECTRONIC THROTTLE BODIES | Case No. 2:13-cv-02603 |
| IN RE: AIR CONDITIONING SYSTEMS | Case No. 2:13-cv-02703 |

| | |
|---|---|
| IN RE: WINDSHIELD WASHER SYSTEMS | Case No. 2:13-cv-02803 |
| IN RE: CONSTANT VELOCITY JOINT BOOT PRODUCTS | Case No. 2:14-cv-02903 |
| IN RE: SPARK PLUGS | Case No. 2:15-cv-03003 |
| IN RE: AUTOMOTIVE HOSES | Case No. 2:15-cv-03203 |
| IN RE: SHOCK ABSORBERS | Case No. 2:15-cv-03303 |
| IN RE: BODY SEALING PRODUCTS | Case No. 2:16-cv-03403 |
| IN RE: INTERIOR TRIM PRODUCTS | Case No. 2:16-cv-03503 |
| IN RE: AUTOMOTIVE BRAKE HOSES | Case No. 2:16-cv-03603 |
| IN RE: EXHAUST SYSTEMS | Case No. 2:16-cv-03703 |
| IN RE: CERAMIC SUBSTRATES | Case No. 2:16-cv-03803 |
| IN RE: POWER WINDOW SWITCHES | Case No. 2:16-cv-03903 |
| IN RE: AUTOMOTIVE STEEL TUBES | Case No. 2:16-cv-04003 |
| IN RE: ACCESS MECHANISMS | Case No. 2:16-cv-04103 |
| IN RE: SIDE DOOR LATCHES | Case No. 2:17-cv-04303 |
| IN RE: ELECTRONIC BRAKING SYSTEMS | Case No. 2:21-cv-04403 |
| IN RE: HYDRAULIC BRAKING SYSTEMS | Case No. 2:21-cv-04503 |

---

THIS DOCUMENT RELATES TO:
End-Payor Actions

**THE HERTZ CORPORATION, AVIS BUDGET GROUP, INC. AND ELEMENT FLEET MANAGEMENT CORP.'S OBJECTION TO SETTLEMENT CLASS COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES IN CONNECTION WITH THE ROUNDS 1-5 SETTLEMENTS**

Settlement Class Members The Hertz Corporation, Avis Budget Group, Inc. and Element Fleet Management Corp. respectfully submit this Objection to Settlement Class Counsel's Motion for an Award of Attorneys' Fees in Connection with the Rounds 1-5 Settlements (Doc. 667 (Case 2:13-cv-00103) (the "Fees Motion")).  For the reasons addressed in the accompanying brief below, Class Counsel's Fees Motion should be denied in its entirety.

Respectfully submitted this 6th day of June, 2025.

/s/ L. Conrad Anderson IV
L. Conrad Anderson IV
**BALCH & BINGHAM LLP**
1901 6th Avenue North, Suite 1500
Birmingham, AL 35203
Telephone: (205) 251-8100
Facsimile: (205) 226-8799
Email: canderson@balch.com

Lorna McGilvray Norton
**BALCH & BINGHAM LLP**
30 Ivan Allen, Jr. Blvd., NW
     Suite 700
Atlanta, GA 30308-3036
Telephone: (404) 261-6020
Email: lnorton@balch.com

*Counsel for The Hertz Corporation, Avis Budget Group, Inc. and Element Fleet Management Corp.*

## TABLE OF CONTENTS

STATEMENT OF ISSUE PRESENTED ............................................................ vi

CONTROLLING OR MOST APPROPRIATE AUTHORITIES ...................... vii

TABLE OF AUTHORITIES ............................................................................ viii

I.    INTRODUCTION .......................................................................................1

II.   THE COURT'S PRIOR FEE AWARDS ....................................................3

    A.   The Round 1 Fee Award ...................................................................3

    B.   The Round 2 Fee Award ...................................................................5

    C.   The Round 3 Fee Award ...................................................................5

    D.   The Round 4 Fee Award ...................................................................7

III.  ARGUMENT AND CITATION OF AUTHORITY ....................................8

    A.   The Court Has Already Determined 22% of Net Settlement
        Proceeds Is a Fair and Reasonable Fee and Has Already
        Awarded that Amount from the Rounds 1 through 4
        Settlements. ......................................................................................9

    B.   The Prior Fee Awards Were Not "Incomplete" or "Partial" Such
        that Class Counsel May Seek Additional Fees from Prior
        Settlements. .................................................................................... 11

    C.   Even if the Court Were to Reconsider the Amount of Attorneys'
        Fees to Which Class Counsel Is Entitled, the Previously
        Awarded 22% of Net Settlement Proceeds Is Fair and
        Reasonable. .................................................................................... 13

    D.   The Work Class Counsel Have Done Since October 2019 Does
        Not Justify an Additional $94 Million in Fees. ............................. 18

    E.   Class Counsel Have Not Supported Their Fees Motion with
        Documentation Necessary for the Lodestar Crosscheck. ............ 20

    F.   Because Class Members Have Not Yet Been Paid, Awarding
        Class Counsel Any Additional Fees is Premature. ....................... 24

    G.   There Is No Legal or Factual Basis for Awarding Interest on
        Any Additional Fees. ..................................................................... 25

H.    Class Counsel's Fees Motion Is Contrary to the Interests of the Class. ........................................................................................ 27

    1.    "Preserving" Settlement Funds is Not Grounds for Additional Fees, and Class Members Have Been Forced to Incur Significant Fees of Their Own. ............................ 27

    2.    Claims Administration Has Been Inefficient and Riddled with Delays and Errors. ...................................................... 29

    3.    Class Counsel's Decision to Delay Distribution Has Reduced the Value of Class Members' Recovery. ............... 31

    4.    Class Counsel Have Reneged on Their Representation to the Court and the Class to Seek Attorneys' Fees Equal to 22% of Net Settlement Proceeds. ........................................ 33

IV.    CONCLUSION.................................................................................... 35

CERTIFICATE OF SERVICE .......................................................................... 36

EXHIBITS

    Declaration of Objectors ............................................................................A

    Declaration of Brian T. Fitzpatrick, filed February 2, 2025, in *In re Blue Cross Blue Shield Antitrust Litigation*, No. 2:13-cv-20000-RDP (S.D. Ala.) .......................................... B

    Vega Economics, "Attorneys' Fees in Auto Parts Settlement" (June 5, 2025) ...........................................................................C

## <u>STATEMENT OF ISSUE PRESENTED</u>

Whether the Court should award Class Counsel more than $94 million in additional attorneys' fees from the Rounds 1 through 5 settlements – on top of the more than $269 million they have already received from the Rounds 1 through 4 settlements – plus interest, thereby awarding Class Counsel total attorneys' fees in excess of 30% of all settlement proceeds where the Court has already ruled that 22% is the maximum that Class Counsel should receive.

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITIES</u>

- *In re Dry Max Pampers Litigation*, 724 F.3d 713 (6th Cir. 2013)

- *Rawlings v. Prudential–Bache Props., Inc.*, 9 F.3d 513 (6th Cir. 1993)

- *In re Flint Water Cases*, 583 F. Supp. 3d 911 (E.D. Mich. 2022)

- *In re Polyurethane Foam Antitrust Litigation*, 135 F. Supp. 3d 679 (N.D. Ohio 2015)

- *In re Cardinal Health Inc. Securities Litigations*, 528 F. Supp. 2d 752 (S.D. Ohio 2007)

## <u>TABLE OF AUTHORITIES</u>

### <u>CASES</u>

*Allapattah Services, Inc. v. Exxon Corp.*,
   454 F. Supp. 2d 1185 (S.D. Fla. 2006) ................................................. 16, 17

*Briseño v. Henderson*,
   998 F.3d 1014 (9th Cir. 2021)............................................................... 27

*Cook v. Rockwell International Corporation*,
   No. 90-CV-00181, 2017 WL 5076498 (D. Colo. April 28, 2017)................. 17

*Dick v. Sprint Communications Co. L.P.*,
   297 F.R.D. 283 (W.D. Ky. 2014) .................................................... 23

*Employees Retirement System of the City of St. Louis v. Jones*,
   No. 2:20-cv-4813, 2022 WL 14160253 (S.D. Ohio Aug. 23, 2022) ............. 14

*In re Blue Cross Blue Shield Antitrust Litigation*,
   No. 2:13-cv-20000-RDP (S.D. Ala.) ............................................. 15

*In re Cardinal Health Inc. Securities Litigations*,
   528 F. Supp. 2d 752 (S.D. Ohio 2007)................................................. 14, 20

*In re Cardizem CD Antitrust Litig.*,
   218 F.R.D. 508 (E.D. Mich. 2003) ............................................... 17

*In re Cendant Corp. PRIDES Litig.*,
   243 F.3d 722 (3d Cir. 2001) ........................................................ 14

*In re Dry Max Pampers Litigation*,
   724 F.3d 713 (6th Cir. 2013)........................................................ 27

*In re Flint Water Cases*,
   583 F. Supp. 3d 911 (E.D. Mich. 2022), *aff'd*, 63 F.4th 486 (6th Cir.
   2023) ....................................................................................... 21, 22

*In re Packaged Ice Antitrust Litigation*,
   No. 08-MDL-01952, 2011 WL 6209188 (E.D. Mich. Dec. 13, 2011) .......... 17

*In re Polyurethane Foam Antitrust Litigation*,
   135 F. Supp. 3d 679 (N.D. Ohio 2015) ..................................... 3, 14

*In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*,
   268 F. Supp. 2d 907 (N.D. Ohio 2003) ..................................... 14

*In re Syngenta AG MIR 162 Corn Litigation*,
   357 F. Supp. 3d 1094 (D. Kan. 2018) ........................................ 16

*Rawlings v. Prudential–Bache Props., Inc.*,
    9 F.3d 513 (6th Cir. 1993)................................................................. 9

*Schultz v. Edward D. Jones & Co., L.P.*,
    No. 4:16-cv-1346, 2021 WL 1222428 (E.D. Mo. Mar. 31, 2021)................. 27

*Shane Group, Inc. v. Blue Cross Blue Shield of Michigan*,
    825 F.3d 299 (6th Cir. 2016)................................................... 21, 24

## OTHER AUTHORITIES

MAN. COMPLEX LIT. § 14.121, 188 (2004) ....................................... 15

## I.     INTRODUCTION[1]

Class Counsel request the Court to award them more than $94 million in additional attorneys' fees – on top of the more than $269 million they have already received – from all settlement proceeds obtained in this case since 2016, plus interest.  Meanwhile, other than a $100 check, class members have received none of their share of the settlements, nor have they been told how much their claims are worth or when they can expect to receive payment. Class Counsel, by contrast, have sought and received attorneys' fees almost contemporaneously with each round of settlements beginning in 2016.

If granted, Class Counsel's request would yield them a total attorneys' fee award in excess of 30% of all those proceeds.  This Court held years ago, however, that Class Counsel are not entitled to attorneys' fees equal to 30% of settlement proceeds, but to 22% of settlement proceeds.  Consistent with that ruling, Class Counsel requested, and the Court awarded, an average of 22% from each of the Rounds 1 through 4 settlements.  Class Counsel are now

---

[1] On June 4, 2025, The Hertz Corporation, Avis Budget Group, Inc. and Element Fleet Management Corp. ("Objectors") filed an *Ex Parte* Motion for Leave to Exceed Page Limit, Doc. 674 (Case 2:12-cv-00103), requesting an extension of the page limit, not to exceed 45 pages. As of the time of filing, the Court has not ruled on that Motion. The text of this brief, however, is only 35 pages. While separate briefs less than 25 pages each could have been filed, Objectors respectfully submit that a single, 35-page brief is more efficient and beneficial to the parties and the Court.

asking the Court to reconsider its prior fee awards years after they were issued, but Class Counsel offer no legal or factual basis for doing so.

Because Class Counsel have been fully compensated with regard to the Rounds 1 through 4 settlements, their Fees Motion can only pertain to the 8000 hours and $8 million worth of work they claim to have done, and the $3.1 million settlements they obtained, since their last fees motion filed in October 2019. Such work plainly does not justify the more than $94 million in additional attorneys' fees Class Counsel seeks.

Attorneys' fee awards equal to 22% of net proceeds are eminently fair and reasonable in billion-dollar settlements such as those obtained in this case. At most, Class Counsel may be entitled to 22% of the net proceeds from the $3.1 million in Round 5 settlements. But Class Counsel's request for an additional $94 million in fees to which the Court has already held they are not entitled and out of settlement funds from which they have already been paid is not fair or reasonable, it is harmful to the interests of the class, and it should be denied.[2]

---

[2] Objectors have standing to object to the Fees Motion. Attached as **Exhibit A** are declarations of each Objector establishing that they are qualifying members of one or more of the Settlement Classes, and containing each Objector's name, address, telephone number and claim number.

## II.   THE COURT'S PRIOR FEE AWARDS

"[I]t would not make sense to grant fee awards for successive settlements in the same case without reference to the fee awards that came before." *In re Polyurethane Foam Antitrust Litigation*, 135 F. Supp. 3d 679, 689 (N.D. Ohio 2015).   Therefore, to understand why Class Counsel's current Fees Motion should be denied, it is useful to recall Class Counsel's representations and the Court's holdings with regard to Class Counsel's four prior fees motions.

### A.   <u>The Round 1 Fee Award</u>

On March 10, 2016, Class Counsel filed their motion seeking attorneys' fees equal to 30% of the Round 1 settlement proceeds "before deducting the litigation costs and expenses" (i.e., 30% of gross settlement proceeds).  Doc. 433 (Case 2:12-cv-00103) at 17.[3]  During the May 11, 2016, Status Conference, the Court stated the appropriate amount of attorneys' fees "in a case of this magnitude" "is a question that the Court wants to resolve now" "at the beginning" of the case.  Doc. 1366 (Case 2:12-md-02311) at 27-29.  "[A]s some of the settlements get larger we need to do something … about these attorney fees to keep them within the realm of reason. … [A]s the settlements go up the percentages have to come down – or may come down."  *Id.* at 27-28.  The Court

---

[3] Citations to documents in this Response are to the document numbers and page numbers generated by the Court's electronic filing system and appearing in the header of each document.

approved a 10 percent "partial" award and asked Class Counsel to submit a supplemental brief addressing the appropriate measure of attorneys' fees going forward. *See* Doc. 1365 (Case 2:12-md-02311) at 78.

On June 14, 2016, Class Counsel submitted their brief requesting "30% of the total of the [Round 1] settlement funds, net of expenses awarded by the Court …." Doc. 491 (Case 2:12-cv-00103) at 12. Class Counsel specifically "advise[d] the Court that it is their intention in the future to apply for attorneys' fees of less than 30% of subsequent recoveries"; "[t]he next fee application would seek no more than 27.5%"; and "***future fee applications by the EPPs would seek no more than 25% of the net settlement funds***." *Id.* at 13 (emphasis added).

On June 20, 2016, the Court granted Class Counsel's motion in part and awarded "a partial attorney fee of ten percent of the [Round 1] settlement proceeds …." Doc. 498 (Case 2:12-cv-00103) at 2. In a November 16, 2016, Status Conference, the Court stated it "should have" awarded Class Counsel attorneys' fees of 20%. *See* Doc. 1558 (Case 2:12-md-02311) at 25-26, 134. Accordingly, on December 5, 2016, the Court issued a supplemental order granting "a further partial attorney fee of an additional ten percent of the settlement proceeds …." Doc. 545 (Case 2:12-cv-00103) at 2.

**B.**    **The Round 2 Fee Award**

Consistent with Class Counsel's representation to the Court in their first fees motion, on February 9, 2017, Class Counsel moved for attorneys' fees equal to 27.5% of the net proceeds from the Round 2 settlements, an amount Class Counsel stated "is in line with Sixth Circuit authority …." Doc. 562 (Case 2:12-cv-00103) at 14. During the April 19, 2017, hearing, the Court stated, "I'm going to do what I have done before [and] … give 20 percent of the amount after the costs have been taken out to be awarded now, the rest to be applied for later when we get all of these cases resolved."[4] Doc. 1748 (Case 2:12-md-02311) at 57. On July 10, 2017, the Court entered its Order awarding Class Counsel attorneys' fees "in the amount of 20% of the net settlement funds" and "reserve[d] ruling on EPPs' request for additional fees from these settlements." Doc. 578 (Case 2:12-cv-00103) at 8.

**C.**    **The Round 3 Fee Award**

Again consistent with Class Counsel's representation to the Court in their first fees motion, on June 14, 2018, Class Counsel moved for attorneys' fees equal to 25% of the net proceeds from the Round 3 settlements, an amount

---

[4] Although the Court believed it had awarded 20% of the *net* settlement proceeds from the Round 1 settlements (i.e., "after the costs have been taken out"), and although Class Counsel had requested a percentage of the *net* settlement proceeds in its Supplemental Memorandum (Doc. 491 (Case 2:12-cv-00103) at 12), Class Counsel actually deducted 20% of the *gross* settlement funds.

Class Counsel again stated "is supported by Sixth Circuit authority …." Doc. 603 (Case 2:12-cv-00103) at 15, 16. During the August 1, 2018, hearing, Class Counsel advised the Court, "as we previously said we would do, we have applied in each round for progressively lower percentages," and "***we think the 25 percent is an eminently reasonable amount from these Settlements***." Doc. 1937 (Case 2:12-md-02311) at 27, 33 (emphasis added). The Court questioned Class Counsel why they requested 25% from the Round 3 settlements when the Court had awarded 20% from the Round 1 and Round 2 settlements. *See id*. at 31. Class Counsel responded,

> the Court reserved judgment on whether … to award more money out of those settlements at the end of the cases. So we are asking for the 25 percent out of this round because we are getting close to the end of the case ….

*Id*. at 32. In other words, Class Counsel sought 25% from the Round 3 settlements to true-up the partial 20% awards from the Rounds 1 and 2 settlements. *Id*. at 34 (Class Counsel stating, "If this application were granted, then if you combine all of the prior awards and use that as a percentage of the settlements achieved to date, including round three, it would be about 22 percent.")

The Court approved Class Counsel's request for fees equal to 25% of the Round 3 net settlement proceeds, which, when combined with the 20% fees from the Rounds 1 and 2 settlements, provided Class Counsel with an overall

fee of approximately 22% of the total settlements.  *See id*. at 34.  The Court stated,

> somewhere between the 20 and 25 percent [is] … a fair resolution in a case with over a billion dollar recovery.  So I'm going to grant the 25 percent, which would equal roughly 22 – it's **22 point-something, and I want you to stick with that for your round four. I'm telling you that now. I think that that would be a fair resolution for an adequate and well deserved attorney fee.**

*Id*. at 36 (emphasis added).  On November 7, 2018, the Court entered its Order awarding Class Counsel attorneys' fees equal to 25% of the net proceeds from the Round 3 settlements.  *See* Doc. 626 (Case 2:12-cv-00103) at 7. That Order said nothing about entertaining a future motion for additional fees from the Round 3 settlements.

### D.  <u>The Round 4 Fee Award</u>

Consistent with the Court's instruction during the August 1, 2018, hearing, on October 31, 2019, Class Counsel filed their motion seeking attorneys' fees from the Round 4 settlements "equal to 22% of the settlement amounts" "plus a pro rata share of the interest earned thereon …." Doc. 297 (Case 2:12-cv-00403) at 13.  Notably, Class Counsel did not request 22% of the *net* settlement proceeds, but "22% of the settlement amounts" (i.e., the *gross*, before deducting expenses), and Class Counsel had never before requested an award of interest.  In their motion, Class Counsel stated, "[t]he request for 22% of each Round 4 settlement amount is in line with percentages that the Court

approved in previous settlements in this case, is supported by Sixth Circuit authority, and is consistent with the previously expressed preference of the Court." *Id.* at 14; *see also* Doc. 2273 (Case 2:12-md-02311) at 12-13 ("[W]e felt that it was appropriate and our duty and responsibility to follow the instructions of the presiding judge at the time we filed our motion for attorney's fees. And we believe that the amount that we are seeking and Judge Battani instructed us to ask for is well within the precedent in the Sixth Circuit and in the Eastern District of Michigan.").

On September 23, 2020, the Court entered its Order awarding attorneys' fees "equal to 22% of the Round 4 Settlements including a pro rata share of the interest earned thereon," although neither Class Counsel nor the Court stated the amount or calculation of the interest to be awarded. Doc. 320 (Case 2:12-cv-00403) at 7. "This award, taken together with the prior awards from the Round 1 Settlements, Round 2 Settlements, and Round 3 Settlements will result in a total award equal to 22.05% of the proceeds of the four rounds of settlements …." *Id.* Again, that Order said nothing about entertaining a future motion for additional fees from the Round 4 settlements.

## III.   ARGUMENT AND CITATION OF AUTHORITY

"The interest of class counsel in obtaining fees is adverse to the interest of the class in obtaining recovery because the fees come out of the common fund set up for the benefit of the class." *Rawlings v. Prudential–Bache Props., Inc.*,

9 F.3d 513, 516 (6th Cir. 1993).  An award of attorney fees must be "reasonable under the circumstances," and the Court "must therefore critically examine the fee request to protect the Class's interests while fairly compensating Class Counsel."  *Polyurethane Foam*, 135 F. Supp. 3d at 689.  There are multiple reasons Class Counsel's request for an additional $94 million in fees from the Rounds 1 through 5 settlements is not fair to the class, not reasonable, and should be denied.

A.  **The Court Has Already Determined 22% of Net Settlement Proceeds Is a Fair and Reasonable Fee and Has Already Awarded that Amount from the Rounds 1 through 4 Settlements.**

This Court has unambiguously determined that an award to Class Counsel equal to roughly 22% of net settlement proceeds is "a fair resolution for an adequate and well deserved attorney fee" "in a case with over a billion dollar recovery."  Doc. 1937 (Case 2:12-md-02311) at 36.  The Court further instructed Class Counsel to "stick with" the 22% figure for future attorneys' fees requests.  *See id*.  Class Counsel have expressly acknowledged their "duty and responsibility to follow the instructions of the" Court to seek fees of roughly 22%, and that such an amount "is well within the precedent in the Sixth Circuit and in" this Court.  Doc. 2273 (Case 2:12-md-02311) at 12-13.  Even before the Court instructed Class Counsel to "stick with" 22%, Class Counsel represented

in 2016 that "future fee applications by the EPPs would seek no more than 25% of the net settlement funds."  Doc. 491 (Case 2:12-cv-00103) at 13.

In direct violation of both the rulings of the Court and Class Counsel's representations to the Court and the class, Class Counsel now request the Court to award them an additional $94 million from the Rounds 1 through 5 settlements – for a total award of 30% of those settlements – plus interest. Class Counsel have not shown any basis justifying an award of more fees from prior settlement funds or for the Court's reconsideration of its prior fee awards.[5]  Because the Court has held attorneys' fees equaling 22% of net settlement proceeds is fair and reasonable, because the Court has already awarded Class Counsel that amount of attorneys' fees from the Rounds 1 through 4 settlements,[6] because Class Counsel are not entitled to have the Court revisit its prior fee awards, and because the class relied on Class

---

[5] Under this Court's Local Rule 7.1(h), parties seeking reconsideration of final orders must file a motion under Federal Rule of Civil Procedure 59(e) or 60(b), and motions for reconsideration of non-final orders "are disfavored" and "must be filed within 14 days after entry of the order and may be brought *only* upon" specified grounds not present here. Regardless whether the Court's prior fee awards are final or non-final, Class Counsel are not entitled to reconsideration of those Orders because they have not complied with Rules 59(e) or 60(b) or Local Rule 7.1(h).

[6] In fact, the Court awarded Class Counsel more than 22% of net settlement proceeds, because its Order relating to the Round 4 settlements awarded fees on the gross amount of those settlements (instead of on the net amount as the Court had done previously, and as Class Counsel had committed to do in the future) and included interest.  *See* Doc. 320 (Case 2:12-cv-00403) at 7.

Counsel's representations to the Court and the class that they would not seek more than 22–25% in fees in deciding not to oppose the prior fee awards or to opt out of the settlements, Class Counsel's Fees Motion should be denied.

**B.** **The Prior Fee Awards Were Not "Incomplete" or "Partial" Such that Class Counsel May Seek Additional Fees from Prior Settlements.**

Class Counsel contend the Court's fee awards from the Rounds 1 through 4 settlements were "interim and incomplete" and "partial" and they are therefore entitled to "an award of additional attorneys' fees from the [Rounds 1 through 4] settlements ...." Fees Motion (Doc. 667) at 57-58. This is plainly refuted by the record.

The Court used the term "interim" in its Orders as a reference to awarding attorneys' fees to Class Counsel in between rounds of settlements, rather than making Class Counsel wait until the conclusion of this case to receive any fee award.[7] The Court did not use the term "interim fee award" to mean a "partial" fee award such that Class Counsel was invited to come back years later and request more attorneys' fees from a previous settlement fund.

---

[7] *See* https://dictionary.cambridge.org/us/dictionary/english/interim (defining "interim" as "the time between two particular periods or events"). Indeed, Class Counsel acknowledged this by stating in each of their previous fee applications, "[i]nterim fee awards are appropriate in large-scale litigation, such as this one, where the litigation will last several years, and in which settlements are reached periodically throughout the course of the ongoing litigation." Doc. 433 (Case 2:12-cv-00103) at 14; Doc. 562 at 21; Doc. 603 at 23-24; and Doc. 297 (Case 2:12-cv-00403).

Again, as discussed above, the Court has expressly held a fair and reasonable rate of attorneys' fees to which Class Counsel is entitled is 22% of the net proceeds from each round of settlements.  Only with regard to the Rounds 1 and 2 settlements did the Court say the fee awards of 20% were "partial" or subject to later supplementation.  *See* Doc. 498 (Case 2:12-cv-00103) at 2; Doc. 1558 (Case 2:12-md-02311) at 25-26, 134; Doc. 545 (Case 2:12-cv-00103) at 2; Doc. 578 (Case 2:12-cv-00103) at 7; Doc. 1748 (Case 2:12-md-02311) at 57.

With regard to the Round 3 settlements, Class Counsel requested and received fees of 25% in order to true-up their Rounds 1 and 2 fee awards and attain an average rate of 22% from Rounds 1 through 3 as the Court instructed. *See* Doc. 1937 (Case 2:12-md-02311) at 32 (Class Counsel stating, "the Court reserved judgment on whether … to award more money out of those settlements at the end of the cases.  So we are asking for the 25 percent out of this round because we are getting close to the end of the case ….").  In their Round 4 fee request, and consistent with the Court's instruction to "stick with" 22% for future fee requests, Class Counsel requested and received 22% of the Round 4 settlement proceeds.[8]

---

[8] Indeed, after each round of settlements, Class Counsel gave notice to class members that they would request a specific percentage of the settlement proceeds in attorneys' fees, the Court set a deadline for class members to object to Class Counsel's request, and the Court awarded Class Counsel attorneys' fees that averaged 22% of the net

The Court's fee awards from the Rounds 1 through 4 settlements were therefore not "partial" or "incomplete."   Rather, the attorneys' fees Class Counsel have been awarded average about 22% of the proceeds from the Rounds 1 through 4 settlements, which is the amount of fees the Court has held is fair and reasonable in this case.  *See* Fees Motion (Doc. 667) at 19 (the Court's "fee awards equaled approximately 22.29% of the total principal settlement amounts of the first four rounds of settlements").  Class Counsel is not entitled to additional fees.

### C.   <u>Even if the Court Were to Reconsider the Amount of Attorneys' Fees to Which Class Counsel Is Entitled, the Previously Awarded 22% of Net Settlement Proceeds Is Fair and Reasonable.</u>

Even if the Court were to accept Class Counsel's invitation to reconsider the amount of attorneys' fees the Court has awarded from the Rounds 1 through 4 settlements, it is widely recognized that, where a settlement of this magnitude is obtained, an attorneys' fee award equal to 22% of net settlement proceeds is eminently fair and reasonable.

---

proceeds of each settlement. Responding to one defendant's concern about fee disputes holding up settlements, the Court stated, "I don't think settlements would be held up because of attorney fees, the settlement amount is the settlement amount, it is just how much of that goes to the attorneys, and ***we know what the max would be because that's always in the notice***."  Doc. 1366 (Case 2:12-md-02311) at 31 (emphasis added). Had class members known that Class Counsel might later seek more fees than disclosed in the notice, they may have decided differently in choosing whether or not to opt out of the settlements.

Contrary to Class Counsel's contention, district courts within the Sixth Circuit, while not ***required*** to do so, do "follow the 'declining percentage principle,' meaning the percentage of recovery allocated to attorneys' fees decreases as the size of the recovery increases." *In re Cardinal Health Inc. Securities Litigations*, 528 F. Supp. 2d 752, 763 (S.D. Ohio 2007) (citing *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 736 (3d Cir. 2001), and *In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*, 268 F. Supp. 2d 907, 938 (N.D. Ohio 2003)); *see also Employees Retirement System of the City of St. Louis v. Jones*, No. 2:20-cv-4813, 2022 WL 14160253, *11 (S.D. Ohio Aug. 23, 2022) ("both parties acknowledge that, in a 'megafund' case such as this, the 'declining percentage principle' applies"); *In re Polyurethane Foam Antitrust Litigation*, 135 F. Supp. 3d 679, 693 (N.D. Ohio 2015) ("as the size of the fund increases, [courts] award smaller percentages of a gross settlement fund in order to recognize a primary goal for class action litigation: passing on to class members the benefit of economies of scale").

Indeed, this Court recognized early in this case that, "as some of the settlements get larger we need to do something … about these attorney fees to keep them within the realm of reason. … [A]s the settlements go up the percentages have to come down – or may come down." Doc. 1366 (Case 2:12-md-02311) at 27–28.

Empirical studies of attorney fee awards from billion-dollar settlements show courts award lower percentages in fees than even the 22% Class Counsel have been awarded in this case.  *See*, *e.g.*, Declaration of Brian T. Fitzpatrick, filed February 2, 2025, in *In re Blue Cross Blue Shield Antitrust Litigation*, No. 2:13-cv-20000-RDP (S.D. Ala.) (Doc. 3258-3) ("Fitzpatrick Decl.," attached hereto as **Exhibit B**); Brian T. Fitzpatrick, "An Empirical Study of Class Action Settlements and their Fee Awards," 7 J. EMPIRICAL LEGAL STUD. 811 (2010) (attached to the Fitzpatrick Decl. as Exhibit 2);[9] *see also* MAN. COMPLEX LIT. § 14.121, 188 (2004) ("[I]n 'mega-cases' in which large settlements ... serve as the basis for calculating a percentage, courts have often found considerably lower percentages of recovery to be appropriate.").

In his recently filed Declaration, Professor Fitzpatrick includes a comprehensive table setting forth "the fee awards in every billion-dollar class action recovery in federal court that [he] could find" between 1998 and 2024. Fitzpatrick Decl. at 15-17.  In the 17 cases where the recovery was between $1 billion and $1.51 billion (slightly lower and slightly higher than the $1.22

---

[9] The district court in *Polyurethane Foam* cited Professor Fitzpatrick's empirical study, among other things, in awarding attorneys' fees in an antitrust class action equal to 23.6% of the $275.5 million settlement fund instead of the 30% class counsel had requested.  *See* 135 F. Supp. 3d at 691-92.

billion here), the average attorneys' fees award was 12.78% of the settlement amount.[10]

In one of these 17 cases, *In re Syngenta AG MIR 162 Corn Litigation*, 357 F. Supp. 3d 1094 (D. Kan. 2018), the court stated its award of attorneys' fees of 33.33% was appropriate because "the facts and circumstances … distinguish this case from other common fund cases with large settlements and warrant a substantial fee award," including "that the litigation proceeded to three trials in a relatively short period of time."  357 F. Supp. 3d at 1112-13.  In another case, *Allapattah Services, Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185 (S.D. Fla. 2006), the court awarded attorneys' fees of 31.33% because the case was "unprecedented" in that it "lasted fifteen years, resulted in two trials, extensive appeals including before the United States Supreme Court, a hotly contested Claims Administration Process, and a settlement whereby Class Members will receive their full compensatory damages and nearly all of their prejudgment

---

[10] In an effort to justify an award of 30% here, Class Counsel state, "this Court has awarded attorneys' fees of approximately 30% of total principal settlement amounts to direct purchaser plaintiffs' class counsel and automobile dealer plaintiffs' class counsel," and contend "[t]here is no reason to award a lower percentage of attorneys' fees to Settlement Class Counsel than to these other plaintiffs' class counsel." Fees Motion at 59-61. The total settlements in each of those cases, however, were less than 1/3 of the settlements here. *Id.* at 21 (approximately $385 million in auto dealers and $386 million in direct purchasers). If awarded the amount requested, including interest, Class Counsel would receive almost as much in *fees* as the *total settlements* in either of those cases.

interest." 454 F. Supp. 2d at 1189.[11]   Excluding these two extreme outlier cases, the average attorneys' fees award among the remaining 15 cases Professor Fitzpatrick studied with settlements comparable to the settlement here was 10.18% of the settlement amount.

Accordingly, the attorneys' fee awards Class Counsel have already received equal to 22% of the net proceeds from the Rounds 1 through 4 settlements are not only fair and reasonable, but they are nearly double the amount of attorneys' fee awarded in comparable billion-dollar-recovery cases nationwide.[12]   Class Counsel have already received fair and reasonable attorneys' fees awards in this case, and they are entitled to no more.

---

[11] For this reason, Class Counsel's reliance on *Allapattah Services* and other cases in which relatively high-percentage attorneys' fees were awarded is greatly misplaced. Similarly misplaced is Class Counsel's reliance on *Cook v. Rockwell International Corporation*, No. 90-CV-00181, 2017 WL 5076498 (D. Colo. April 28, 2017), where the court awarded fees of 40% because the case had lasted 27 years and "involved a four-month trial, fifteen published opinions of this Court, two separate appeals, two remands back to this Court, and two separate rounds of Supreme Court certiorari briefing." 2017 WL 5076498 at *3; *see also In re Packaged Ice Antitrust Litigation*, No. 08-MDL-01952, 2011 WL 6209188, *17 (E.D. Mich. Dec. 13, 2011) (awarding fees of between 26.5% to 29% of settlement fund where notice to class stated counsel was going to seek 30% and no class member objected).   Class Counsel also misplaces reliance on *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003), which Class Counsel contends "not[es] that direct purchaser class plaintiffs received a 30% fee award that equated to lodestar multiplier of 3.7."   Fees Motion (Doc. 667) at 22 n.20, 55 n.121. The attorneys' fees awarded in *Cardizem*, however, equaled 17% of the settlement proceeds; the court only fleetingly referenced a 30% award made to a separate group of plaintiffs in a separate order.  *See* 218 F.R.D. at 533, 534.

[12] In addition, the percentages awarded on the prior fee motions do not account for the fact that those fees were actually received by Class Counsel years ago, while the settlement funds to be distributed to the class have remained in escrow—unpaid, undisbursed, and steadily eroding in value due to inflation. According to the

### D. The Work Class Counsel Have Done Since October 2019 Does Not Justify an Additional $94 Million in Fees.

Because the Court has already awarded Class Counsel the full amount of attorneys' fees to which they were entitled from the Rounds 1 through 4 settlements (totaling $269,174,403.35), the additional $94,076,695.98 (plus interest) Class Counsel seek in their current Fees Motion logically must pertain to the work Class Counsel have performed since their Round 4 fees motion filed in October 2019.  The work described in the Fees Motion and the accompanying declarations, however, does not justify an additional award of attorneys' fees equal to almost one-third of the total amount in fees Class Counsel have already received.

The bulk of the work summarized in Class Counsel's current Fees Motion appeared in their four prior fees motions and includes such laborious tasks as drafting complaints and other pleadings, responding to motions to dismiss, preparing class certification filings, reviewing "millions of pages" of documents, engaging in discovery, taking and defending hundreds of depositions, engaging

---

"Attorneys' Fees in Auto Parts Settlement" economic analysis prepared by Vega Economics (attached hereto as **Exhibit C**), the present value as of December 2024 of the Rounds 1–4 settlement funds is effectively $773,362,338, compared to the $987,024,855 awarded. Thus, in December 2024 dollars, the $269,174,403 Class Counsel already received in 2016-2020 equates to $343,165,531 in December 2024 value. Therefore, Class Counsel have effectively received in December 2024 dollar value approximately $73,991,128 in extra value, which equates to a weighted average current attorneys' fees percentage of 25.82%, not 20–22%. If Class Counsel's Fees Motion is granted, they will receive attorneys' fees equal to 33.06% of the December 2024 present-value Rounds 1 through 4 settlement proceeds.

and working with experts, and negotiating settlements. *Compare* Fees Motion (Doc. 667) at 10-13 *with* Doc. 433 (Case 2:12-cv-00103) at 12-13, Doc. 562 (Case 2:12-cv-00103) at 16-18, Doc. 603 (Case 2:12-cv-00103) at 18-20, and Doc. 297 (Case 2:12-cv-00403) at 16-18.  For this substantial work, the Court awarded Class Counsel attorneys' fees of 22% of the Rounds 1 through 4 settlement proceeds, totaling more than $269 million.  Class Counsel have therefore been fairly and adequately compensated for this work.

The only additional work listed in the current Fees Motion and the accompanying declarations, and thus the only work Class Counsel performed since October 2019, relates to the approval of the Round 5 settlements and claims administration.[13]  *See* Fees Motion (Doc. 667) at 28, 31-32.  For this work, Class Counsel state they "and their professional staff worked a total of 7,980.50 hours between October 1, 2019 through March 31, 2025, amounting to $8,514,810.50 in lodestar."  Fees Motion (Doc. 667) at 53; Doc. 667-1 ¶ 32. Class Counsel is therefore seeking attorneys' fees of more than $94 million plus

---

[13] Class Counsel do not disclose how many hours were spent litigating with the Round 5 settling defendants, presumably because that time was minimal. In fact, Class Counsel had already settled with two of those defendants—Bosch and TRW—before filing suit. *See* Doc. 1 in *Ascher v. ZF TRW Automotive Holding Corp. et al.* (Case 2:21-cv-11993) at 2 n.1 ("At the time of this filing, Plaintiffs have settled with Bosch and TRW."). And Class Counsel filed their motion for preliminary approval of the settlements with all three defendants on August 26, 2021—less than one year after the Court granted the Round 4 fees motion. Doc. 200 (Case 2:16-cv-03703); Doc. 2 (Case 2:21-cv-11993); Doc. 3 (Case 2:21-cv-11993).

interest for roughly 8000 hours and $8 million worth of work – resulting in a lodestar multiplier of more than 11.

"Class Counsel have already received substantial fee awards [totaling $269,174,403.35] from prior settlements [totaling $1,220,850,658.00], and those prior fee awards are relevant to assessing a reasonable award for Class Counsel's efforts in achieving the [Round 5] settlements" of just over $3 million and in the settlement claims administration process. *Polyurethane Foam*, 135 F. Supp. 3d at 689. The additional fees Class Counsel request in their Fees Motion are neither reasonable nor fair to the class, and the Court should deny their request.

### E.   Class Counsel Have Not Supported Their Fees Motion with Documentation Necessary for the Lodestar Crosscheck.

Even if the Court were inclined to award Class Counsel fees from the $3 million in Round 5 settlement proceeds, Class Counsel have not presented the Court with sufficient documentation to properly perform the required lodestar crosscheck. In determining the reasonableness of requested attorneys' fees, district courts within the Sixth Circuit perform a lodestar crosscheck by adding up attorney time, multiplying it by a reasonable hourly rate, then comparing that amount to the fees requested. *See In re Cardinal Health Inc. Securities Litigations*, 528 F. Supp. 2d 752, 761 (S.D. Ohio 2007).

Class Counsel must present documentation itemizing the specific tasks performed by the attorneys and staff in their firms in sufficient detail to enable the Court to perform this crosscheck.  For instance, in *In re Flint Water Cases*, 583 F. Supp. 3d 911 (E.D. Mich. 2022), *aff'd*, 63 F.4th 486 (6th Cir. 2023), the Court held class counsel's submissions were sufficient where they "included detailed and appropriate descriptions of hours expended" and "sufficient explanation to understand the task being undertaken by the timekeeper" and allowed the Court "to determine whether the tasks were undertaken by the appropriate level of professional and that the time charged for tasks was not excessive."  583 F. Supp. 3d at 943-44.

In *Shane Group, Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299 (6th Cir. 2016), by contrast, the Sixth Circuit vacated the district court's approval of the class settlement and award of attorneys' fees based on the lodestar method, because

> class counsel provided no backup whatsoever—no time records, no descriptions of work done—in support of their hours spent working on the case.  Instead, class counsel provided the district court with a single page of documentation for each firm, listing only the employee names, titles, rates, hours, and—by multiplying the rates and hours—the total lodestar for that firm.

825 F.3d at 310.  Here, Class Counsel have submitted precisely the type of documentation the Sixth Circuit held in *Shane Group* was insufficient to establish the lodestar.

21

Class Counsel have attached declarations from each law firm setting forth the work they have performed, with each declaration reciting—verbatim—the exact same services. *See* Doc. 667-1 ¶¶ 12, 23; Doc. 667-2 ¶¶ 3, 6; Doc. 667-3 ¶¶ 3, 6; Doc. 667-4 ¶¶ 3, 6. Contrary to Class Counsel's assertion, their declarations and supporting documentation are not "detailed." Fees Motion (Doc. 667) at 51. They provide no itemization or description showing which attorney or staff person in which firm performed any specific service or task. They each provide only a single-page chart listing the names of the attorneys and staff personnel in the firm, their hourly rate, and the total number of hours they worked from October 1, 2019 through March 31, 2025. *See* Doc. 667-2 at Ex. A; Doc. 667-3 at Ex. A; Doc. 667-4 at Ex. A.

While the Court's lodestar crosscheck does not have to be "exhaustive" (*Flint Water Cases*, 583 F. Supp. 3d at 941), Class Counsel have never provided the Court with anything more than these single-page charts containing the most basic and skeletal information. Class Counsel have therefore failed to provide the Court with the required detailed descriptions of hours expended on specific tasks by individual timekeepers to enable the Court "to determine whether the tasks were undertaken by the appropriate level of professional and that the time charged for tasks was not excessive." *Id.* at 943-44; *see also In re Flint Water Cases*, 63 F.4th 486, 498 (6th Cir. 2023) (noting "detailed billing and costs records could perhaps have revealed information" that would

have altered district court's lodestar crosscheck analysis); *Dick v. Sprint Communications Co. L.P.*, 297 F.R.D. 283, 300 (W.D. Ky. 2014) ("In the absence of records explaining counsel's standard hourly rates and how their time was utilized in this endeavor, the Court is unable to determine a reasonable hourly rate.  In turn, the absence of such a rate leaves the Court unable to perform a lodestar crosscheck.") (punctuation omitted).

The reason Class Counsel's lack of documentation is particularly problematic here is that Class Counsel claim to have "worked a total of 7,980.50 hours, amounting to $8,514,810.50 in time" between October 1, 2019, and March 31, 2025.  Doc. 667-1 ¶ 32.  That amount of time equates to a blended hourly rate of over $1,000, which is excessive for any law firm much less their "professional staff."  Comparing the fees they claim to have incurred to the more than $94 million requested in their Fees Motion results in a patently excessive lodestar multiplier of more than 11.[14]

---

[14] Class Counsel contend that in performing the lodestar crosscheck, the Court should consider all the time they have spent since the inception of this case, and not just the time spent since their last fees motion in October 2019.  *See* Fees Motion (Doc. 667) at 52. They quote from the Court's Order awarding fees from the Round 2 settlements (although they cite the Order from the Round 4 settlements) stating "it would be impractical to compartmentalize and isolate" the work Class Counsel did "in any particular case at any particular time …." *Id*.  That rationale made sense in considering fee requests from prior rounds of settlements, which were coming within one year of each other and resulted from essentially the same work by Class Counsel. But the Court need only look to the additional settlement-administration related work Class Counsel summarize in their current Fees Motion, which was not included in their prior motions, to see that rationale no longer applies. In other words, it is no longer "impractical to compartmentalize" the work Class Counsel have done since

Because Class Counsel have "provided no backup whatsoever" showing specific work done by individual attorneys and support personnel to support their claimed 8000 hours spent and $8 million fees incurred working on this case since October 2019, the Court lacks any basis to perform the lodestar crosscheck. *See Shane Group, Inc.*, 825 F.3d at 310. For this additional reason, Class Counsel's Fees Motion should be denied.

### F.   Because Class Members Have Not Yet Been Paid, Awarding Class Counsel Any Additional Fees is Premature.

While Class Counsel are before the Court asking for fees for the fifth time, the class members they purportedly represent have received nothing beyond the $100 minimum payments. More than five years have passed since the effective deadline to file claims, and claims administration remains ongoing. Class members have not even been told how much their claims may be worth, much less a definite date of distribution. And while Class Counsel will no doubt remind the Court that class members' funds are held in an interest-bearing account, they have provided no information as to the amount of interest earned or the rate at which it is accruing.

To the extent the Court determines Class Counsel are entitled to any additional fees, nothing should be paid before claims administration is

---

October 2019. To the extent the Court is inclined to perform a lodestar crosscheck, therefore, the Court should look only to the work Class Counsel have done since October 2019.

concluded. Indeed, the actual lodestar cannot be calculated until Class Counsel have completed their work, and thus the actual lodestar multiplier may ultimately be less than 11. But the Court will not have the information to determine the reasonableness of any fee petition until after that work has concluded. Moreover, once Class Counsel receive their final fee award, they will have no financial incentive to perform the additional work necessary to see that the funds recovered for the class are actually properly distributed to the class. It is patently unfair for class members to continue to wait while Class Counsel continues to be compensated, especially here, where Class Counsel is asking for more than the 22% to which they are entitled.

G.   **There Is No Legal or Factual Basis for Awarding Interest on Any Additional Fees.**

Class Counsel also request the Court to award them a pro rata share of the "interest earned on the amount of any award granted through this application." Fees Motion (Doc. 667) at 20, 53. Class Counsel do not cite a single legal authority justifying their entitlement to an award of interest on the additional $94 million they request, nor do they provide any information as to the amount of such interest. They want the Court to enter a blanket order now that they are entitled to interest, and then apparently plan to later award themselves interest at some unknown interest rate for some unspecified period of time from the interest that was earned on the class's settlement funds. This

is akin to asking the Court to enter an order awarding Class Counsel their attorneys' fees and leaving it to Class Counsel's discretion to decide how much to pay themselves from the class members' settlement funds.

Class Counsel contend the Court granted them "the pro rata percentage of interest earned on the Rounds 1-4 principal settlement amounts, which has been paid." Fees Motion (Doc. 667) at 20 n.12. That is not true. The Court only included interest in its Order granting attorneys' fees from the Round 4 settlements, not from the Rounds 1 through 3 settlements (as evidenced by Class Counsel's citation to only the Court's Round 4 fee award Order). Accordingly, awarding accrued interest on attorneys' fee awards is not routine in this case as Class Counsel suggests. Class members in Round 5 strongly object to an award of any interest to Class Counsel from the class members' Round 5 settlement funds, even if class members in Round 4 did not object to the award of interest on their settlement funds.

Class Counsel stated long ago in response to objections and concerns about the timing of distributions that settlement proceeds were "deposited into interest-bearing escrow accounts *for the benefit of the class* …." Doc. 1365 (Case 2:12-md-02311) at 5 (emphasis added). To the extent the Court is inclined to award Class Counsel anything more, any such award should not include interest, especially where Class Counsel has not even disclosed to the Court or the class members the rate or amount of interest.

26

### H.    Class Counsel's Fees Motion Is Contrary to the Interests of the Class.

"[U]nlike in virtually every other kind of case[,] in class-action settlements the district court cannot rely on the adversarial process to protect the interests of the persons most affected by the litigation – namely, the class. Instead, the law relies upon the fiduciary obligations of the class representatives and, ***especially, class counsel***, to protect those interests." *In re Dry Max Pampers Litigation*, 724 F.3d 713, 717-18 (6th Cir. 2013) (punctuation omitted; emphasis added); *see also See Briseño v. Henderson*, 998 F.3d 1014, 1025 (9th Cir. 2021) (because class counsel "owes a fiduciary duty to the class members, class counsel would be ethically forbidden from sacrificing the class members' interests"); *Schultz v. Edward D. Jones & Co., L.P.*, No. 4:16-cv-1346, 2021 WL 1222428, *1 (E.D. Mo. Mar. 31, 2021) ("the conduct of Class Counsel [must be] in the best interest of the Class").  In addition to the reasons discussed above, Class Counsel's request for more attorneys' fees is contrary to the interests of the class for several other reasons.

### 1.    "Preserving" Settlement Funds is Not Grounds for Additional Fees, and Class Members Have Been Forced to Incur Significant Fees of Their Own.

Class Counsel justify their request for additional fees, in part, based on their work "preserving" the settlement funds—specifically, defeating the efforts of ineligible claimants to have their claims recognized.  Fees Motion

(Doc. 667) at 34.  To use their words, Class Counsel seek compensation for "work that ensured that settlement funds would not be diluted by untimely and non-meritorious claims" (*id*. at 58), but yet Class Counsel seek to dilute those same settlement funds through additional fee awards. Class Counsel cite no authority to support such a proposition, and it is not contemplated by the *Ramey* factors.

Moreover, Class Counsel fail to mention the many hours they spent *opposing* class members' efforts to receive the settlement funds recovered on their behalf. For example, under the Plan of Allocation originally proposed by Class Counsel, class members who purchased subject vehicles in a "Damages State" were required to release their claims, but they were not eligible to receive any of the settlement proceeds unless they were physically located in a "Damages State". Only after certain class members challenged this unfair distinction, and incurred substantial attorneys' fees of their own, did Class Counsel agree to modify the Plan of Allocation to allow compensation for these claims.

Class Counsel also maintained that fleet management companies (FMCs) that purchased millions of vehicles containing price-fixed parts were not entitled to recover settlement proceeds, even though they were included in the "Settlement Class" definition. These FMCs were forced to file a motion to enforce the settlement agreements, once again incurring their own attorneys'

fees. *See* Element Fleet Corporation, et al.'s Motion to Enforce Settlement Agreements, Doc. 2149 (Case 2:12-md-02311). Months later, and after prolonged negotiations, Class Counsel relented and recognized the FMC class members' claims. *See* Stipulation and Order (Doc. 2182 (Case 2:12-md-02311)).

Class Counsel now want to be paid for the time they spent opposing claimants' efforts and correcting their own mistakes, actions that did not add a single dollar to the settlements. Class members' recovery should not be further whittled away by ceding more settlement proceeds to Class Counsel.

### 2. Claims Administration Has Been Inefficient and Riddled with Delays and Errors.

The original deadline for filing the vast majority of claims was March 16, 2020.[15] That deadline was extended to June 2020 when the online submission went down. For the next three years, claimants heard nothing.

Then in June 2023 claimants received a "Notice of Claim Deficiency" requesting documentation to substantiate ownership of a random sampling of vehicles. More than five months later, the Administrator sent notices seeking

---

[15] Although the deadline to file claims for the Round 5 settlements was January 7, 2023, claims submitted prior to the deadline for the Rounds 1 through 4 settlements were reviewed for eligibility in the Round 5 settlements without the need for resubmission. And according to the Administrator, the majority of the Round 5 claims are standard claims, not large claims. *See* Declaration of Peter Sperry (Doc. 656-1 (Case 12-cv-00103)) ¶ 8. Also, the Administrator did not conduct defect outreach or record sampling for claims submitted exclusively for the Round 5 settlements. *See* Declaration of Michelle M. La Count, Esq. (Doc. 664-1 (Case 12-cv-00103)) ¶ 5.

additional information related to claims with a January 1 purchase date. In December 2023, many claimants received a "Supplemental Notice of Claim Deficiency" similar to the request made six months earlier. After that audit concluded in February 2024, another year passed before claimants entitled to a *pro rata* distribution received a Claim Determination notice from the Administrator in late April 2025. The process for reviewing those determinations and resolving disputes remains ongoing.

To be sure, this is a complex settlement administration involving a substantial number of claimants and several moving parts. But the delays and disruptions over the five-plus years since the claims deadline cannot be chalked up to mere complexity and claim volume. In August 2023, the Administrator's Senior Project Manager left. Soon thereafter, the Administrator conducted a second audit of all third-party claims simply to determine whether they had all of the claim details and data, having discovered errors in a similar audit conducted in 2021. Moreover, many class members were notified their claims were deficient due to a lack of supporting documentation, even though the documentation had in fact been submitted years earlier. Although the Administrator acknowledged the error, claimants were required to resubmit data. And of course, all of these administration costs are being borne by the class.

Time and again, the class has been told payment is right around the corner. Just last year, Class Counsel reported to the Court that they anticipated seeking authorization to distribute the remaining pro rata payments "by the end of this year." Doc. 656 (Case 12-cv-00103) at 13. But the end of 2024 came and went, and the end of 2025 is fast approaching. Delivering class members any benefit from the "truly remarkable recovery" touted by Class Counsel simply has not been a priority.

### 3. Class Counsel's Decision to Delay Distribution Has Reduced the Value of Class Members' Recovery.

Because nearly a decade has passed since the first settlement in this case, settlement funds available for distribution to class members are worth substantially less today than when they were awarded to class members in 2016, 2017, 2018, and 2020, respectively.  While Class Counsel were paid hundreds of millions of dollars promptly upon approval of the settlements between 2016 and 2020, the remainder of those funds have been intentionally deferred and left to decay in value. The unilateral decision by Class Counsel to defer distribution and not to compensate class members after each Settlement Round 1–4, while notably choosing to timely compensate themselves after each, coupled with an unprecedented 5-year delay in settlement administration, has caused the class a loss in settlement fund value by as much

as 25%, and a total loss in value of 17.6%. Vega Economics, "Attorneys' Fees in Auto Parts Settlement" (Ex. C), p. 2.

In short, if they were paid in December 2024 each *pro rata* class member would effectively receive only $0.82 cents on the dollar of what was approved and awarded by this Court. *Id.* Each day of delay after the Motion for *Pro Rata* Distributions to Authorized Claimants, Doc. 2256 (Case No. 2:12-md-02311), was filed in December 2024 further dilutes the distribution value to class members.

The expert analysis prepared by Vega Economics reveals the scope of the eroded value of the Round 1 settlement funds alone:

> In the Auto Parts Antitrust Litigation, the distribution of settlement to claimants has been delayed in all rounds. Because of the time value of money, delays in payment result in loss of value.
>
> As an example, consider the round 1 settlement. If distributed at the time of court order on June 20, 2016, claimants would have received $171,361,245 net of attorneys' fees. The settlement was never distributed and its balance, as of December 1, 2024, was $169,282,055. Adjusted for inflation, this balance is worth as much as $128,038,066 if paid in June 2016. Claimants are therefore worse off due to the delay in the distribution of settlement funds, that instead of receiving $171,361,245 if paid promptly in June 2016, they now can at best recover $128,038,066 once the effect of inflation is accounted for, **for a loss of more than $43 million in purchasing power.**

*Id.* at 2 (emphasis added). Performing these same adjustments against all four settlement rounds, the aggregate effect is a total ***loss of more than $165***

*million* in class member value to the balance of the settlement funds as of December 1, 2024. *Id.*

While Class Counsel seek attorneys' fees commensurate with those awarded in the auto dealers and direct purchaser settlements, Class Counsel chose not to timely distribute settlement funds to their client class members in the same manner as those cases. In both auto dealers and direct purchasers, settlements were approved in multiple rounds, attorneys' fees were paid in multiple rounds, and settlement funds were distributed in multiple rounds. That is the usual and customary method of distribution, particularly where the amounts recovered are so substantial. By delaying and deferring distribution to the class, while obtaining fees contemporaneously with the settlements, and now seeking additional fees *plus the interest* accrued on the amount of any award, the best interests of the class have been abandoned by Class Counsel.

### 4. <u>Class Counsel Have Reneged on Their Representation to the Court and the Class to Seek Attorneys' Fees Equal to 22% of Net Settlement Proceeds.</u>

As discussed above, Class Counsel repeatedly represented to the Court and to the class that they would seek no more than an average of 22% of all net settlement funds. *See*, *e.g.*, Round 3 Notice (Doc. 600-3 (Case 2:12-cv-00103)) at 21 ("Class Counsel may ask the Court ... for attorneys' fees based on their services in this litigation, ***not to exceed 25%*** of the approximately $432,823,040 in additional Settlement Funds resulting from the Round 3

Settlements ....") (emphasis added); Round 4 Notice (Doc. 2005-6 (Case 2:12-md-02311)) at 19 (Class Counsel may ask Court for attorneys' fees "***not to exceed 22%*** of the approximately $184 million in additional Settlement Funds resulting from the Round 4 Settlements ....") (emphasis added).  By their Fees Motion, Class Counsel are going back on the promise they made to the Court and the class.

In August 2024, long after Class Counsel's first four fee motions were granted, Class Counsel sought and received the Court's permission to distribute $100 minimum payments, "which would constitute payment in full for most of the qualifying Settlement Class Members ...."  Doc. 656 (Case 2:12-cv-00103) at 11. Then, only months after distributing those payments and fully satisfying the claims of the vast majority of the class—and thus eliminating potential objections from the vast majority of the class—Class Counsel filed the current motion for additional attorneys' fees.

In filing their current Fees Motion, Class Counsel are seeking more attorneys' fees than they stated they would to the Court and to the class, are doing so after the majority of the class has been paid and can no longer object, are seeking additional fees from settlement funds from which they have already been paid (at rates well above average), and are trying to take a portion of the interest earned on class members' funds as a result of their own five-year delay in distributing those funds.

34

## IV.   CONCLUSION

For the reasons set forth above, class members The Hertz Corporation, Avis Budget Group, Inc. and Element Fleet Management Corp. respectfully request the Court to deny Class Counsel's Fees Motion in its entirety or, alternatively, award fees of no more than 22% of the Round 5 settlements (in line with the Rounds 1–4 awards and as previously determined to be appropriate), but not until after class members have been paid.

Respectfully submitted this 6th day of June, 2025.

/s/ L. Conrad Anderson IV
L. Conrad Anderson IV
**BALCH & BINGHAM LLP**
1901 6th Avenue North, Suite 1500
Birmingham, AL 35203
Telephone: (205) 251-8100
Facsimile: (205) 226-8799
Email: canderson@balch.com

Lorna McGilvray Norton
**BALCH & BINGHAM LLP**
30 Ivan Allen, Jr. Blvd., NW, Suite 700
Atlanta, GA 30308-3036
Email: lnorton@balch.com

*Counsel for The Hertz Corporation, Avis Budget Group, Inc. and Element Fleet Management Corp.*

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on the 6th day of June, 2025, I caused the foregoing document to be electronically filed with the Clerk of Court via the Court's CM/ECF system, which will automatically notify all counsel of record.

*/s/ L. Conrad Anderson IV*
L. Conrad Anderson IV
